FRANK G. DROGOS *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF BENSENVILLE, Defendant-Appellant.

Second District    No. 80-622

Opinion filed June 3, 1981.—Modified on denial of rehearing October 8, 1981.

Ray F. Fick, Jr., and George P. Harris, both of McNeill, McElroy, Fick & Singer, of Chicago, for appellant.

Daniel L. Houlihan, William J. Hennessy, and James F. Stack, all of Chicago, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

This appeal arises from an order of the circuit court of Du Page County which declared that the zoning ordinance of the defendant, village of Bensenville, was unconstitutional insofar as it applied to plaintiffs' property. In ordering the village of Bensenville to issue building permits for the erection of a proposed gasoline filling station on the subject property, the trial court determined that the R-3 single-family residence classification of the Bensenville zoning ordinance was an arbitrary and unreasonable exercise of legislative power with respect to plaintiffs' property. On appeal, the village of Bensenville urges that the presumptive validity of the village zoning ordinance must be upheld because the plaintiffs did not sustain their burden of proving by clear and convincing evidence that the zoning classification is arbitrary, capricious, and bears no relationship to the public safety, morals and welfare. We reverse.

The subject property is located at the southwest corner of Route 83 and Foster Avenue and is improved with a five-room single-family residence, a 2½-car garage, and an asphalt paved driveway with egress only to the southbound lanes of Route 83. The house and garage are both oriented to the east, facing Route 83. The property contains 20,400 square feet with a frontage of 130 feet on route 83 and 157 feet on Foster Avenue. The Drogoses purchased the property in 1965 for $22,500, with knowledge that the property was zoned R-3, single-family residential. At that time, the real estate broker noted that it was a possible site for a service station in the future, and that was one of the reasons the Drogoses bought the property. In 1977, the Drogoses leased the property to Shell Oil Company for a 10-year term subject to the procurement of a zoning classification which would allow the construction of a gas station. Thereafter, the Drogoses applied to the village of Bensenville for a reclassification of the property to a B-3 restricted service business district which would permit the desired use. Following a public hearing before the zoning board of appeals and that board's recommendation to deny the petition, the Bensenville Board of Trustees denied the rezoning request, and this declaratory judgment action followed.

50

At the hearing on the cause, Frank Drogos testified that at the time he bought the property, Route 83 was a two-lane roadway with no traffic signal at its intersection with Foster, and there was a 100-foot parkway between his east property line and Route 83. Route 83 has since been widened to three southbound lanes and three northbound lanes, divided by a median strip, with separate left-turn-only lanes for east and west-bound traffic onto Foster. Traffic signals are now present at the inter-section, and the Drogoses' parkway has been reduced to about 55 feet in depth. Drogos testified that the accelerating and decelerating cars and trucks at the signalized intersection cause a great deal of noise now, that the privacy of his property has been significantly diminished and that his wife is subject to "cat calls" when she is working in the garden. He also testified he can no longer turn left from his driveway to go north due to the median strip on Route 83. Instead, he must go south three blocks, then west one block, north three blocks, and then east one block in order to be able to turn north onto Route 83. In 1965 Foster Avenue was an unimproved roadway which only extended one block east of Route 83. Foster Avenue is now a paved two-lane road which extends eastward to York Road, with separate left-turn-only lanes for traffic which is north or southbound onto Route 83.

Joseph Zgonina, a registered professional engineer with expertise in the field of traffic engineering, testified that Foster Avenue has an average daily traffic volume of 4,900 cars west of Route 83 and 10,500 cars east of Route 83. Route 83 has a volume of 50,000 cars per day. He stated that Route 83 is designated as a through-traffic arterial according to the Chicago Area Transportation Study, and Foster Avenue is classified as a collector arterial on the Du Page County Highway Plan and the Chicago Area Transportation Plan. Zgonina testified that Foster Avenue extends westward approximately 1½ miles to another major north-south collector arterial, Wood Dale Road. Midway between Foster Avenue and Wood Dale Road is Central Street, another collector arterial which has promi-nence due to the fact that it enters an industrial park to the north and carries large volumes of through-traffic from that industrial area south on Central, east on Foster Avenue, and then south on Route 83. He noted the signalized intersection at Route 83 generated a large volume of noise due to the generally heavy traffic usage and the turning movements in the intersection. The considerable amount of noise is caused primarily by the trucks which must gear down to stop and gear up again to proceed. Zgonina testified there is a problem with the property as it presently exists in terms of safe and efficient access. He testified that the proposed gas station design would eliminate sight restrictions at the intersection pro-viding a clear view across the corner. Further, a gas station is a highway-oriented use, and does not cause increased traffic volume since it attracts

its customers from the existing traffic volume on the roadway. He recommended modifying the proposed gas station site plan by eliminating one of the two proposed curb cuts on Foster Avenue, leaving only the westerly one and the two fronting on Route 83, and Shell Oil Company had agreed it would implement this recommendation if the rezoning were granted.

The area surrounding the Drogoses' property in the southwest quadrant of Route 83 and Foster is predominantly single-family residential; however, the other three corners of the intersection are currently utilized for various business and quasi-public uses. The northwest corner of Foster and Route 83 is zoned B-3 restricted service business and is improved with a Clark Oil Company gas station. The lot immediately west of this filling station is zoned B-4 general service business district and is improved with a large church and parking lot. The area to the north of and adjacent to the Clark station is zoned B-4 general service business, but is vacant. The southeast corner of the intersection was rezoned within the past several years to B-1 retail business district, and is improved with a restaurant. Testimony indicated that the restaurant has a separate parking area for trucks, and the restaurant and its adjacent auto and truck parking areas immediately abut an R-3 single-family residence district, which area continues south to Irving Park Road. This R-3 zone is immediately abutted on the east by a M-1A office, engineering and research laboratory zone and, to the east of that, an M-1 limited manufacturing zone, almost all of which zones are currently developed accordingly. The northeast corner of the intersection is zoned R-3 single-family residence district, and is improved with a large church. Two recently constructed office buildings are located north of and adjacent to the church in an area zoned B-1 retail business which extends north to Fairway Drive. This B-1 zone is abutted on the east by a large M-1 limited manufacturing zone, most of which is developed as such.

Mr. William McCann, a real estate appraiser and broker, testified as a valuation witness on behalf of plaintiffs. He stated that the value of the property as presently utilized would not exceed $60,000 whereas the property would be worth approximately $120,000 if it were developed as a gas station. McCann also concluded that the construction of a gas station on the subject site would have a minimal impact on the value of adjacent residences. His opinion was based on the fact the proposed construction would include a "green belt," a landscaped area with a six-foot fence, separating the gas station from the single-family residences on the west and the south of the subject property, and on the fact there has already been a depreciation in the value of these residences due to the upgrading of Route 83 and Foster Avenue, and on the fact that there is an industrial and business "trend" in this area. This trend is evidenced by the Clark Gas

Station, which was rebuilt in approximately 1972 to replace an older gas station, the recent rezoning of the southeast corner to allow construction of the restaurant/truck stop, and the new office buildings located north of the church on the northeast corner. He noted the homes adjacent to the subject property on the south do not front on Route 83 but, rather, face a small side street and derive their residential character therefrom. In contrast, the subject property directly faces Route 83 and derives its character from that major roadway.

Mr. William Lawrence, a city planning and zoning consultant, also testified on behalf of the plaintiffs. Mr. Lawrence testified the highest and best use of the property would be for restricted service business which would include a gas station. He based that opinion on the fact that the subject site is located opposite a gasoline station on the north side of Foster, and opposite a restaurant zoned B-1 on the east side of Route 83. The unique location of the property at the intersection of Route 83 and Foster makes the subject site particularly suitable for the proposed gas station use. He stated that he believed proper landscaping and fencing would render the proposed use nonharmful to the residences adjoining the subject site. Although roadways often provide natural demarcation for different districts, he noted that Route 83 does not serve as such a boundary in this instance.

Thomas Collins, a real estate appraiser and broker, testified on behalf of the defendant. He concluded that the value of the subject site was $75,000, taking into consideration that it is a large enough parcel to provide a second buildable lot. He testified the value would increase to $120,000 under the proposed gas station use. He estimated that the proposed use would result in approximately a 10% depreciation in the value of adjacent residences, and that the proposed landscaping buffer would have a limited mitigating effect on this depreciation because the property is too small a parcel to permit effective screening. Collins concluded that the highest and best use of the subject property is as it exists. He based this opinion on the size of the property, the road frontage, the access to Foster Avenue, and the location of the property as a part of a solid residential neighborhood.

Three homeowners who reside adjacent to the subject site on the west and the south also testified on behalf of the defendant. They uniformly stated that the proposed use would have a harmful effect on the use and enjoyment of their property due to the increase in noise, as well as the presence of gas fumes and the glare of headlights from automobiles utilizing the gas station during the night. All three stated they felt traffic conditions on Route 83 had generally improved since the widening and signalization, and that there is less noise because traffic flow is better and there are fewer accidents because the road is safer. Two

of them testified they would oppose any change whatsoever in the use of the property.

The village of Bensenville urges that plaintiffs have failed to overcome the presumptive validity of the village's zoning ordinance. It is well settled that a presumption exists in favor of the validity of a zoning ordinance, and the burden of proving its invalidity falls on the one who attacks the ordinance. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428.) To overcome this presumption, the challenging party must establish by clear and convincing evidence that, as applied to their property, the ordinance is arbitrary and unreasonable, and without substantial relation to the public health, safety, comfort, morals or general welfare. (57 Ill. 2d 415, 428; *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-80.) The testing of the validity of the zoning ordinance as it applies to the plaintiffs' property is not conducted academically, however; it is tested pursuant to the reality of the application of the specific use proposed to the property in question. Plaintiff bears the burden of proving by clear and convincing evidence that the zoning ordinance is unreasonable insofar as it *excludes* that specific use. In other words, the plaintiff must prove by clear and convincing evidence that the use proposed *is* reasonable. *Schultz v. Village of Lisle* (1972), 53 Ill. 2d 39; *Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370; *La Salle National Bank v. County of Du Page* (1979), 77 Ill. App. 3d 562, 568.

Citing *Gulf Oil Corp. v. County of Du Page* (1975), 24 Ill. App. 3d 954, 958, the village urges that the overriding consideration in zoning cases is whether the presumptive validity of the ordinance has been overcome and there is, therefore, a dimension of proof not required in most nonzoning litigation. It further urges, therefore, that the rule that a trial court's findings will not be disturbed on review unless they are against the manifest weight of the evidence does not always have the same force in zoning cases that it does in other litigation. Although we agree that zoning cases require a stricter degree of proof than most nonzoning cases, the village has not cited any authority—nor have we discovered any—which requires a standard on review stricter than "the manifest weight of the evidence." It has been held that the standard for review of zoning cases, as in other cases, is that the findings of the trial court will not be disturbed unless against the manifest weight of the evidence. (*Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 516-17; *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48.) Further, a mere conflict of testimony does not create an irrebuttable presumption that an ordinance is valid or require a finding that the reasonableness of the ordinance is debatable; such conflicts go to the credibility of witnesses and the weight to be afforded their testimony. These are matters to be

determined by the trier of fact, subject to reversal only when against the manifest weight of the evidence. (*Bass v. City of Joliet* (1973), 10 Ill. App. 3d 860, 870.) "[C]lear and convincing evidence is considered to be more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense." (*In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 14.) "The manifest weight of the evidence is that which is 'the clearly evident, plain and indisputable weight of the evidence.' [Citations.] In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. [Citation.]" *In re Application of County Collector* (1978), 59 Ill. App. 3d 494, 499.

The court in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47 summarized the facts to be considered in determining the validity of a zoning ordinance: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes, and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area of the vicinity of the subject property. (Accord, *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 180-81.) Two additional facts to be considered in determining the validity of a zoning ordinance are: (1) the care with which the community has undertaken to plan its land use development, and (2) the evidence or lack of evidence of community need for the use proposed by the plaintiff. (See *Sinclair Pipe Line Co. v. Richton Park* (1960), 19 Ill. 2d 370, 378; *Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill. 2d 77, 86-87; *Hoffmann v. City of Waukegan* (1964), 51 Ill. App. 2d 241, 244; *DeMarie v. City of Lake Forest* (1981), 93 Ill. App. 3d 357, 361.) As a general rule, no single factor is controlling (*Ritter v. Village of Morton Grove* (1979), 70 Ill. App. 3d 640); the validity of each zoning ordinance must be determined by its own facts and circumstances. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46.

In assessing the facts relative to the validity of the ordinance, we are mindful that plaintiffs purchased the property with knowledge of the zoning restrictions. Although such a circumstance should not be ignored (*Gulf Oil Corporation v. County of Du Page* (1975), 24 Ill. App. 3d 954, 958; *La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 430), it is evident the Drogoses purchased the property primarily to be their residence and they lived there for 12 years before they entered into the lease with Shell Oil Company. We observe that consideration of the

potential resale value of a piece of property at the time of purchase is a usual incident thereto. The existing uses and zoning of nearby property have been detailed above, and need not be repeated here in the course of our analysis of the eight relevant factors.

The current zoning results in a diminishment of plaintiffs' property value of between $45,000 and $60,000. Retention of the current zoning would benefit surrounding property owners in that the plaintiffs' property would continue to act as a buffer between Route 83 and Foster Avenue and the properties adjacent to the south and to the west.

Residences to the west and to the south are built on approximately 50 by 130-foot lots and were valued at $80,000 and $70,000 respectively. Plaintiffs' property, 157 feet by 130 feet—large enough for three buildable lots—was valued by the defendant's witness, Thomas Collins, at $75,000. Plaintiffs' witness, William McCann, testified the adjacent residences had already depreciated as the result of the Clark Gas Station, the restaurant/truck stop, the office buildings north of the church on the northeast corner of the intersection and the general industrial trend in the area. Assuming development of the property as proposed, McCann testified any further depreciation would be minimal, whereas Collins determined there would be a 10-percent depreciation in the value of these adjacent homes.

The property was described as a "unique" site for the use proposed, due to its location at one of the few signalized intersections on Route 83 and in terms of traffic volume and the fact the next gas station to the south is about 4½ miles away and to the north—excluding the Clark station—almost two miles away. Additionally, there was testimony regarding the State's plan to construct the Elgin-O'Hare Expressway and the fact that a major interchange will be located one-half mile north of the subject property at Thorndale. The signal at Foster is the first stop light south of the proposed interchange. There was testimony that no "domino" effect as the result of a rezoning of the property would be expected, since no other parcel to the south of the subject property on either the east or west side of Route 83 is as uniquely suited for the use proposed. In addition, Mr. Drogos testified about the unfavorable aspects of living in proximity to a major roadway. Further, Collins admitted on cross-examination that the subject property would be the least desirable homesite in the neighborhood.

With regard to land development in the area, Drogos testified one home had been built within the past three years at the southeast corner of Spruce and Foster (Spruce is the first north-south street west of Route 83), and that a great deal of the homes in the neighborhood were already constructed when he purchased his home in 1965. As previously noted, the Clark Gas Station was built to replace a previous gas station, and the

vacant residential parcel at the southeast corner of Route 83 and Foster was rezoned and a restaurant/truck stop was built in about 1977. A large industrial park now exists on the east side of Route 83 extending north and southward on land that in 1965 was the site of the Mohawk Country Club. No evidence of a comprehensive zoning plan for the village of Bensenville was received. The construction of the Clark station is indicative of a reaffirmation of the business character of that property. The rezoning and construction of the restaurant/truck stop and the construction of the two office buildings in the B-1 district to the north of the church on the northeast corner of Route 83 and Foster, both of which business uses immediately abut R-3 single-family residence districts, belie the existence of a policy to provide buffer areas between residential and more intense uses, or a policy of using main thoroughfares as natural boundaries.

A "community need" for the proposed use could be inferred from the evidence of the relative scarcity of stations in the vicinity, notwithstanding the Clark station across the street. We note there was no evidence whether the Clark facility was self-service, which is the type proposed by Shell for the subject property. An additional consideration in this regard is the future construction of the Elgin-O'Hare Expressway and the increased traffic volume that may be generated from that facility southbound onto Route 83.

Considering all of these factors, we believe the zoning as generally applied to the property is invalid. We hasten to add, however, that the finding of invalidity does not compel us to permit use of the property for the proposed gas station. Such relief is available only if the plaintiffs have also proven by clear and convincing evidence that the proposed use is reasonable. (*La Salle National Bank v. County of Du Page* (1979), 77 Ill. App. 3d 562, 567-68.) We do not believe plaintiffs have met this burden.

There was testimony that a six-foot high fence would be erected on the south and west boundaries of the subject property and that by virtue of the landscaped "green belt," the closest any vehicles patronizing the station would come to adjacent residences would be 25 feet. The record indicated the gas station's hours of operation would at least be competitive with the Clark station—though there was no evidence offered as to that station's hours of operation—and quite possibly the proposed station would be open 18 or 24 hours a day. There was no evidence concerning the restaurant/truck stop hours of operation. Although the station would not market diesel fuel for automobiles, and the Shell representative testified that trucks can obtain more reasonable prices at stations other than Shell, trucks would not be excluded from using the gas station. Although lighting for the proposed station is relatively low-level and is located under the canopy covering the self-service pumps, the site plan indicates the bottom of the canopy is 12 feet from the ground.

In sum, we do not believe plaintiffs have clearly and convincingly shown that rezoning to permit the proposed gas station use would be reasonable, and would not cause a severe disruption to the residential quality of the neighborhood, particularly during the dusk-to-dawn hours. It cannot seriously be maintained that the operation of an 18- or 24-hour self-service gas station that does not exclude trucks within 25 feet of an established residential neighborhood will not adversely affect the quality of life and general welfare of that neighborhood. We conclude that the trial court's finding that plaintiffs' proposed plan of development would be compatible and reasonable in its application to the subject property was against the manifest weight of the evidence, and we reverse.

The judgment of the circuit court of Du Page County is reversed.

Judgment reversed.

SEIDENFELD, P. J., and LINDBERG, J., concur.