COSMOPOLITAN NATIONAL BANK, Trustee *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* THE COUNTY OF COOK, Defendant-Appellee and Cross-Appellant—(The Village of Richton Park, Intervening Defendant-Appellee and Cross-Appellant).

First District (1st Division) No. 82—195

Opinion filed August 8, 1983.

CAMPBELL, J., concurring in part and dissenting in part.

Daniel L. Houlihan & Associates and Kirkland & Ellis, both of Chicago (Daniel L. Houlihan, Sharon M. Sullivan, and Frank A. Winter, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey and James F. Henry, Assistant State's Attorneys, of counsel), for appellee County of Cook.

Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago (Marvin J. Glink and John B. Murphy, of counsel), for appellee Village of Richton Park.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

The present appeal arises out of a declaratory judgment action brought to test the validity of a Cook County zoning ordinance and a

denial by the county of a special use permit for operating a sanitary landfill. The plaintiffs include the trustee who holds legal title to the subject property, the beneficiary of the land trust, and John Sexton Contractors Co. (Sexton), the lessee of the subject property under a fill lease agreement. Under the terms of the agreement, Sexton was to develop the property as a sanitary landfill for general municipal refuse, excluding special waste, hazardous and toxic materials and liquid waste. The defendants in this case are Cook County and the village of Richton Park which was given permission to intervene in the trial court proceedings below.

The subject property is a parcel approximately 84 acres in size located in unincorporated Rich Township, Cook County, Illinois. The property is bounded on the east by Interstate Highway 57 (I-57), on the south by Sauk Trail, on the west by Central Road and on the north by gas pipeline, electric company and railroad rights of way.

The type of facility referred to as a sanitary landfill, which Sexton operated on the subject property for nearly two years and which it now seeks to resume operating, has been defined in the Illinois Environmental Protection Act as

"a facility *** for the disposal of waste on land *** without creating nuisances or hazards to public health or safety, by confining the refuse to the smallest practical volume and covering it with a layer of earth at the conclusion of each day's operation ***." (Ill. Rev. Stat. 1981, ch. 111½, par. 1003(x).)

The compacting and daily covering of refuse avoids the old-fashioned open dump problems of rodents, flies, odors and burning. The presence of a natural high-impermeability clay seal, supplemented by additional clay sealing when necessary, prevents the migration of liquids out of the landfill and thus protects underground water supplies from contamination. Sexton's engineering design showed 10 trenches on the subject property were to be successively excavated and landfilled. Landfill operations were to cease after the last trench was filled approximately 10 years later, and the property was then to be developed for industrial and open space uses.

The present case has a lengthy legal and historical background which includes prior litigation. In order to fully appreciate the present posture of these litigants, that portion of the history which is relevant has been summarized.

On May 22, 1975, Sexton applied to the Illinois Environmental Protection Agency (EPA) for a solid waste management development permit to develop (not operate) the subject property as a sanitary landfill. On August 25, 1975, the permit was granted subject to a

number of standard conditions, among them a condition which specified that the permit did not release Sexton from compliance with local zoning ordinances.

On September 26, 1975, the Illinois Supreme Court announced its decision in *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 343 N.E.2d 493, which invalidated the practice of issuing sanitary landfill permits subject to local zoning restrictions. The court cited its previous decision in *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360, 288 N.E.2d 432, and held that with respect to sanitary landfills local zoning jurisdiction was preempted by the Illinois Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1001 *et seq.*) and the EPA, which now had exclusive jurisdiction, was not authorized to delegate that responsibility to local zoning bodies.

In reliance on *Carlson*, Sexton never applied to the county for rezoning or a special use permit but continued to comply with EPA procedures for obtaining a permit to operate a sanitary landfill. The EPA required Sexton to submit responses on eight points dealing with environmental impact and engineering issues, and site suitability, land use and zoning issues.[1] On June 15, 1976, Sexton submitted its responses on the EPA's eight points and shortly thereafter Cook County and Richton Park submitted additional materials challenging Sexton's responses. On September 13, 1976, after considering the materials in support and in opposition to the landfill, the EPA issued Sexton a second development permit, this one not subject to local zoning.

Nearly seven months later, on March 8, 1977, Cook County filed a complaint against Sexton alleging the development work was in violation of the county zoning ordinance and seeking to enjoin further development or operation of the sanitary landfill. Sexton pleaded several affirmative defenses in its answer, among them the defense that local zoning jurisdiction was preempted under *Carlson* and that the EPA now had exclusive jurisdiction over landfills.

During the pendency of this action, the EPA issued findings of fact with respect to its eight points. The agency found that Sexton had met all the requirements of the Environmental Protection Act and the rules and regulations of the Illinois Pollution Control Board, as well as all obligations necessitated by the EPA's land use and site suitability review. These lengthy findings of fact may be summarized as follows: the underlying geology of the proposed site was suitable

---

[1] At this time the EPA stated its position to be that all land use and site suitability data should be presented to the agency for review so that it could undertake its responsibilities pursuant to *Carlson*.

for landfill development; the engineering plans submitted by Sexton were adequate for landfill development and operation in an environmentally sound manner; the landfill was located so as to minimize scenic blight; the landfill was located so as to avoid any hazards to public health or safety and to minimize any offenses to the senses of persons residing, working, or traveling in the immediate vicinity of the site; the site was located so as to minimize incompatability with the character of the surrounding area; the location of the landfill was such that substantial depreciation of nearby property should not occur; there was a need in the area for a sanitary landfill and the need would grow more acute in the ensuing months; the landfill was located so as to avoid a continued adverse effect on the existing air and water quality; and the proposed site was well suited for its intended use as a landfill. The EPA also stated that Sexton had operated other landfills in the past in an environmentally safe manner and was considered a "good operator" by the agency. The EPA subsequently issued an operating permit to Sexton and landfill operations were commenced on September 28, 1977.

Shortly thereafter, on October 27, 1977, the circuit court ruled in favor of Sexton, holding that the EPA had exclusive jurisdiction over sanitary landfills and the county zoning jurisdiction had been preempted. A decree was entered dismissing the county's complaint and enjoining the county from interfering with Sexton's landfill operations. This dismissal was eventually appealed to the Illinois Supreme Court, which reversed in *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 389 N.E.2d 553. Distinguishing *Carlson* and *O'Connor*, the court held that under the 1970 Illinois Constitution a home rule unit has concurrent jurisdiction as to sanitary landfills with the EPA and the Illinois Pollution Control Board. On remand, the circuit court entered a preliminary injunction prohibiting Sexton from operating the landfill and granted the county's motion for judgment on the pleadings on October 16, 1979. At this time, the landfill had been operated just under two years and was approximately 20% filled.

Following the circuit court action, Sexton applied to the county to reclassify a portion of the subject property (Parcel 1) from R-4 single-family residential to P-2 open space and the balance (Parcel 2) from R-4 single family to I-1 restricted industrial. Application was also made for a special use permit to operate a sanitary landfill as an interim use. The Zoning Board of Appeals for Cook County held extensive hearings on the proposed zoning changes and special use permit during which Sexton and Richton Park presented numerous witnesses and submitted lengthy memoranda. On November 14, 1980, the zon-

ing board issued a 71-page document of findings and recommendations to the Cook County Board of Commissioners. The zoning board made specific findings on numerous points and made recommendations based, in part, on the following considerations: the geology of the area and the proposed engineering design were suitable for landfill operations; the character of the subject property and surrounding property were suitable; there was a demonstrable need for a landfill at this site; a tax impact study showed a tenfold greater revenue to local taxing bodies by permitting the proposed zoning change; the effect of the prior sanitary landfill operations on nearby property, especially the showing of a comparable or better rate of land value appreciation for a residential subdivision nearest the landfill site when compared to another subdivision 2½ miles away; and the absence of any adverse effect on traffic patterns. The zoning board then recommended by a four to one vote that the rezoning and special use applied for be granted subject to certain conditions.[2]

The Cook County board decided not to concur with the zoning board findings and voted to deny plaintiffs' application for rezoning and special use. The plaintiffs in the present case then filed suit for a declaratory judgment that the county zoning ordinance was invalid as it prohibited the interim use of a sanitary landfill and the ultimate uses of Parcel 1 for open space and Parcel 2 for restricted industrial. The trial court held the county zoning ordinance invalid and void in that it prohibited light industrial and open space uses, but denied plaintiffs' prayer for relief with respect to the sanitary landfill use. Plaintiffs appeal from that portion of the judgment upholding the denial of a special use permit to operate a sanitary landfill on the subject property. Defendants, Cook County and Richton Park, cross-appeal from that portion of the order holding the county zoning ordinance invalid insofar as it prohibits light industrial and open space uses on the property in question.

## I

We will first address defendants' cross-appeal dealing with the invalidation of the county zoning ordinance.

■ A zoning ordinance, like any other legislative enactment, is presumed valid, and the burden of proving its invalidity falls upon the one who attacks the ordinance. (*Tomasek v. City of Des Plaines*

---

[2]The conditions related to a sanitary open use remaining on Parcel 1 for a period of five years after completion of the filling and the minimum quantities of impermeable clay (10 feet) which was to underlie the lowest portion of refuse in the landfill.

(1976), 64 Ill. 2d 172, 354 N.E.2d 899.) This presumption may be overcome by a property owner who shows by clear and convincing evidence that the ordinance as applied to him is unreasonable and arbitrary and bears no substantial relation to the public health, safety, morals, or welfare. *County of Cook v. Priester* (1976), 62 Ill. 2d 357, 368, 342 N.E.2d 41; *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 53, 426 N.E.2d 1276.

■ As the court noted in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, among the factors to be taken into consideration when determining whether a zoning ordinance bears sufficient relation to the public health, safety, or welfare are the following: (1) the existing uses and the zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of the plaintiff promotes the health, safety, morals, or welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property (hereinafter referred to as the *La Salle National Bank* factors). The validity of each zoning ordinance must be determined on its own facts and circumstances; no single factor is controlling. *La Salle National Bank*; *Oak Park Trust & Savings Bank v. Village of Palos Park* (1982), 106 Ill. App. 3d 394, 435 N.E.2d 1265.

Plaintiffs argue there is no substantial dispute that the present R-4 single-family residential zoning does not represent the highest and best use of the property. The county explicitly concedes as much and the comprehensive plans of both the county and Richton Park provide for this property to be ultimately zoned partly light industrial and partly open space. Furthermore, in invalidating the R-4 classification, the trial court entered favorable findings of fact on all of the six *La Salle National Bank* factors which are all supported by the record.

■ Nevertheless, a court has no power to rezone property from one classification to another. That is a legislative function. (*Reeve v. Village of Glenview* (1963), 29 Ill. 2d 611, 195 N.E.2d 188; *Harris Trust & Savings Bank v. Duggan* (1982), 105 Ill. App. 3d 839, 435 N.E.2d 130.) A zoning ordinance may be set aside only to the extent necessary to permit the *specific use* proposed by the landowner (*Schultz v. Village of Lisle* (1972), 53 Ill. 2d 39, 289 N.E.2d 614). Accordingly, in reviewing the validity of a zoning ordinance, a court should not inquire whether the property as presently zoned might be

better zoned some other way. To do so would amount to judicial rezoning. The proper scope of review was correctly stated in *La Salle National Bank v. City of Chicago* (1970), 130 Ill. App. 2d 457, 460, 264 N.E.2d 799:

> "The most that a court may do after declaring an existing zoning ordinance void as applied to certain property is to find from clear evidence before it that the *specific use* contemplated by the owner is reasonable and may be permitted." (Emphasis added.)

 Defendants, cross-appellants argue that plaintiffs never committed themselves to any specific end use for the subject property and that the portion of the judgment voiding the zoning ordinance was so broadly drawn that it amounted to judicial rezoning. We agree.

The record reveals that Sexton had only committed itself to a specific interim use of the subject property as a sanitary landfill. Landfill operations were not to cease until approximately eight years later and plaintiffs only suggested methods by which the site might then be developed in accordance with light industrial and open space uses. The vagueness of plaintiffs' end use plan was also reflected in the judgment entered below which provided that the zoning ordinance was void "insofar as it purports to prohibit *** light industrial use for Parcel 1 and open space use for Parcel 2 ***, all of said uses being in accordance with the evidence presented to this court."

In effect, this judgment purports to rezone the property in question from R-4 to I-1 light industrial and P-2 open space. Such judicial rezoning is beyond the power of the court which is required to frame its order with respect to a specific use contemplated by the owner. (See *Dolton v. Village of Mundelein* (1967), 86 Ill. App. 2d 245, 229 N.E.2d 681.) Accordingly, we reverse that portion of the judgment invalidating the Cook County zoning ordinance as being overly broad.

## II

 In denying plaintiffs' prayer for relief with respect to the special use permit to operate a sanitary landfill, the court based its decision, in part, on the following Cook County zoning ordinance:

> "No special use shall be recommended by the Zoning Board of Appeals unless said Board shall find:
>
> 1. That the establishment, maintenance, or operation of the special use will not be detrimental to or endanger the public health, safety, or general welfare.
>
> 2. That the special use will not be injurious to the use and enjoyment of other property in the immediate vicinity for

the purposes already permitted, nor substantially diminish and impair property values within the neighborhood.

3. That the establishment of the special use will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the district.

4. That adequate utilities, access roads, drainage and/or other necessary facilities have been or are being provided.

5. That adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets. \*\*\*" 1976 Cook County Zoning Ordinance sec. 13.10—7.

The record reveals that the court first made findings of fact favorable to plaintiffs on each of the six factors set forth in *La Salle National Bank*. The court then stated that it was also necessary for plaintiffs to satisfy the county ordinance's special use criteria before the special use of a sanitary landfill could be granted for the subject property. It then proceeded to make findings adverse to plaintiffs on ordinance points one and two.

Plaintiffs contend that the trial court erred in making its determination with reference to the county special use standards. They argue that the court should have limited its findings to the six *La Salle National Bank* factors and, since the court found entirely for plaintiffs on those factors, their prayer for relief with respect to the special use should have been granted.

We agree with plaintiffs' assertion that a denial of a special use permit should be tested by the same standard as that used to review zoning decisions. The plaintiff must show by clear and convincing evidence that such denial bears no real or substantial relation to the public health, safety, morals, or general welfare. (*Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 324 N.E.2d 406; *National Pride Equipment, Inc. v. Village of Niles* (1982), 109 Ill. App. 3d 639, 440 N.E.2d 1053.) However, we cannot agree with plaintiffs' contention that the court is restricted to the six *La Salle National Bank* factors when making this determination. As we have recently held in *National Pride Equipment, Inc.*, a court may, in addition to traditional factors used in reviewing zoning decisions, take into account any and all standards for special uses established by a legislative body. (109 Ill. App. 3d 639, 644; see also *La Salle National Bank v. County of Lake* (1975), 27 Ill. App. 3d 10, 16-17, 325 N.E.2d 105.) Accordingly, we reject plaintiffs' contention that it was error for the trial court to consider the special use standards set forth in section 13.10—7 of the Cook County zoning ordinance.

Plaintiffs alternatively urge us to reverse that portion of the judgment refusing relief with respect to the sanitary landfill special use as being against the manifest weight of the evidence. Plaintiffs argue that the overwhelming number of trial court findings favor them and that the two adverse findings on the county special use standards are internally self-contradictory as well as being unsupported by the record and inconsistent with other findings which are clearly supported. We agree.

The record reveals that the trial court made the following findings adverse to plaintiffs with respect to the two county special use standards:

> "The evidence is that there has been no substantial diminution and impairment of property values within the neighborhood. Richton Park developed more when the land site was operating than when it wasn't operating ***. However, this Court cannot say that the use of this property as a sanitary landfill will not be injurious to the use and enjoyment of other property in the immediate vicinity, to wit, the Village of Richton Park.
>
> I do believe and I so find that the operation of this special use sanitary landfill will not endanger the public health, safety or general welfare. But I cannot say that Sexton has shown, by a clear preponderance of the evidence, that this special use as a sanitary landfill will not be detrimental to the public health, safety, or general welfare."

The self-contradictory nature of these findings is apparent. But assuming *arguendo* this hurdle can be overcome, we find little in the record to support a finding of injury to the use or enjoyment of other property or detriment to the public health, safety, or general welfare.

The voluminous evidence entered on environmental impact clearly reveals that the landfill site was operated in an environmentally safe manner in the past and that it could continue to be safely operated in the future. The trial court, in making its determination of the six *La Salle National Bank* factors, stated that it was "convinced that the underlying geology of the subject property and the operation of the sanitary landfill would ensure the absence of harm to the public health and safety from leachate and methane migration." The EPA also made extensive findings of fact, admitted into evidence at trial, on the environmental and engineering issues dealing with the protection of ground water, surface drainage and other hydrological factors, and additional findings on methane control, cover material and noise control. The agency found that the site could be operated in an environmentally safe manner before it issued an operating permit to Sexton

and continually monitored the site afterwards. During the two years of landfill operations, the EPA made unscheduled monthly inspections of the site and never issued any violations or citations against Sexton. The county zoning board made an independent review of environmental safety, taking into account the two year operating history of the landfill, and found in favor of plaintiffs in its findings and recommendations to the county board. (These findings were also admitted into evidence and are part of the record on appeal.) At trial, the county conceded that, from an environmental perspective, the subject property is suitable for a landfill and the slight evidence presented by Richton Park to the contrary was properly given little weight by the trial court.

■ Defendants argue that evidence on the existence of offensive odors emanating from the landfill was sufficient to support the two findings adverse to plaintiffs on the county special use standards. Testimony on this point was elicited from five area residents who stated that there were strong odors, mostly in the summertime, which they found particularly offensive. All five witnesses also testified that they could obtain relief by going indoors and turning on their air-conditioners, indicating that whatever odors that did exist were not strong enough to be drawn in through air-conditioning units. It was also undisputed that during the summer months the prevailing winds were away from the residential areas.

The existence of strong and offensive odors is rebutted by testimony elicited on property values, building activity and real estate development during the period the landfill was in operation. The evidence reveals that substantial residential development took place just east of I-57 during this period and that there was no significant difference in building activity between a subdivision close to the landfill and two simultaneously developing subdivisions that were substantially removed. Unrefuted testimony on property values revealed that during this same period property values in nearby residential developments appreciated at a rate equal or greater than those 1½ miles from the landfill site. The willingness of people to purchase homes in those subdivisions closest to the landfill was also unaffected by the landfill operation. One developer admitted on cross-examination that 1978 was his second best year for home sales (the site was operated between September 28, 1977, and September 17, 1979).

This testimony is based on objective facts and supports explicit trial court and county zoning board findings that building activity and surrounding land values were not adversely affected by the landfill operations. This building activity and appreciation of land values, as

well as the sales record of a subdivision closest to the landfill, could not have occurred in this manner had conditions really been as the five witnesses described. In the face of this unrefuted objective evidence inconsistent with the presence of strong offensive odors, we find that the testimony of the local residents was inherently improbable and should have been rejected in this regard. *Broussard v. Huffman Manufacturing Co.* (1982), 108 Ill. App. 3d 356, 365, 438 N.E.2d 1217; *Old Second National Bank v. Gould* (1979), 75 Ill. App. 3d 839, 844, 393 N.E.2d 1356.

■ Defendants also argue that aesthetic considerations involving visual pollution and scenic blight are sufficient to support the adverse findings of the trial court. They contend that a matter of paramount importance is whether the subject property would be in substantial conformity with the surrounding uses in the vicinity.

This argument ignores the explicit trial court finding that "there is a recognizable and acceptable and significant zoning buffer between the landfill site and Richton Park." This finding is well supported by the record. The undisputed evidence shows that I-57 has proven to be a natural dividing line between trends east and west of that major highway. All the residential developments in Richton Park lie to the east of I-57. The landfill is located to the west of I-57 and is, in turn, bordered on its west by a Northern Illinois Gas Company facility, on its north by Commonwealth Edison high tension wires, a two-track railroad and a Daily Express truck terminal, and on its south by undeveloped farm land. The bulk of the property west of I-57 remains vacant with the only uses of any predominance being industrial in character. A sanitary landfill would be in substantial conformity with such uses.

The physical separation of the landfill from single-family developments by a major interstate highway, coupled with the fact that a substantial single-family development occurred during the establishment and operation of the landfill, indicate the trial court was correct in finding an adequate zoning buffer. It should also be noted that none of the residents testified that they could see the landfill from their homes and the EPA findings and expert testimony reveal that the site was substantially screened by I-57 and the earth berming on the landfill site. Consequently, we find that the trial court findings adverse to plaintiffs are unsupported by evidence of visual pollution or nonconforming use.

■ Finally, defendants argue that the relative gain to the public by prohibiting the landfill operation outweighs any hardship imposed upon plaintiffs and, therefore, the denial of the special use relief is

not against the manifest weight of the evidence. This very point was explicitly addressed by the trial court when it resolved the fourth *La Salle National Bank* factor in favor of plaintiffs. The trial court stated:

> "Unquestionably the denial of the special use sanitary landfill would result in some hardship by way of lessening of the value or the lessening of the profits to be gained by the owner of the landfill and the property on which it is being imposed, and unquestionably, equally, there would be some gain to the public by the preservation or reinstitution of another sanitary landfill."

The trial court's finding of significant economic loss to plaintiffs is well supported by expert testimony elicited at trial on the valuation of the subject property. The pressing need for landfill facilities in this area is also well documented in the Illinois Institute for Environmental Quality (IIEQ) 1975 report on solid waste management systems in northeastern Illinois, which was admitted into evidence at trial.[3]

What we consistently fail to find in the record is any credible evidence of gain to the public by denying the special use of a sanitary landfill. The concern of those living in areas close to the landfill is understandable. The purchase of a home is the single largest investment that most people ever make. However, we can find little evidence that any real harm has been visited on the residents of the nearby subdivisions in the past or that they are likely to be harmed if landfill operations were to resume. On this point we find the following frequently quoted passage appropriate:

> "[T]he use of property cannot be restricted or limited merely because neighboring property owners so desire, or because they think it might protect the value of their residences." (*Regner v. County of McHenry* (1956), 9 Ill. 2d 577, 582, 138 N.E.2d 545.)

The restriction or limitation must also bear some reasonable relation to the public health, safety, or welfare. (*Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 324 N.E.2d 406.) Here, the evidence clearly shows that there has been no adverse impact on land values, land development, or willingness of people to purchase homes in the developments closest to the landfill during the two years the site was in operation. There have also been successive findings of fact by the EPA, the county zoning board and the trial court that the landfill site poses no threat to the environment. Accordingly, we cannot agree that de-

---

[3]The IIEQ was a research agency established by the Illinois Environmental Protection Act and no longer exists. In 1978 its functions were assumed by the Illinois Institute for Natural Resources. Ill. Rev. Stat. 1979, ch. 96½, par. 7401.

nial of the special use can be based on the relative gain to the public outweighing the hardship imposed on plaintiffs.

In summary, we can find little evidence in the record to support the finding by the trial court that the sanitary landfill will be injurious to the use or enjoyment of other property in the immediate vicinity or that the landfill will be detrimental to the public health, safety, or general welfare. We find the trial court's determinations on these two county special use standards to be both internally self-contradictory and inconsistent with other trial court findings clearly supported by the evidence.

It is established that while a trial court's findings are entitled to great weight, it is still our duty to reverse when such findings are contrary to the manifest weight of the evidence. (*City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 349 N.E.2d 399; *Spillers v. First National Bank* (1980), 81 Ill. App. 3d 199, 400 N.E.2d 1057.) We believe that the two adverse findings were against the manifest weight of the evidence and also find plaintiffs have established by clear and convincing evidence that the denial of the special use permit by the county bore no substantial relation to the public health, safety, morals, or general welfare. Accordingly, we reverse that portion of the judgment denying the special use relief. We wish to make the limits of our decision so clear as to admit of no possible mistake. The above opinion approves the operation of a sanitary landfill as defined in the Illinois Environmental Protection Act above cited. Under no circumstances should the within opinion, or any language therein, be considered an approval for using the landfill as a disposal ground for hazardous or dangerous chemical waste products of any kind or description. It is thus anticipated that proper use of the landfill will not create any nuisance or hazard to public health or safety.

In view of the foregoing, we reverse that portion of the judgment voiding the R-4 zoning and permitting all I-1 light industrial or P-2 open space uses on the subject property as being overly broad. We also reverse that portion of the judgment denying the special use of a sanitary landfill. On remand, we direct the trial court to enter judgment invalidating the zoning ordinance only to the extent that it prohibits the specific interim use of the proposed sanitary landfill.

Reversed and remanded, with directions.

GOLDBERG, J., concurs.

JUSTICE CAMPBELL, concurring in part and dissenting in part:

I concur in that part of the majority opinion reversing that portion of the judgment invalidating the Cook County zoning ordinance. I respectfully dissent from that part of the opinion which directs the trial court to enter a judgment invalidating the zoning ordinance to the extent that it prohibits the specific interim use of the proposed sanitary landfill.

Plaintiffs filed the instant action for declaratory judgment that the county zoning ordinance is invalid as it prohibits the interim use of the subject property as a sanitary landfill. Richton Park was permitted to intervene. The parties entered into a stipulation of facts and plaintiffs presented five witnesses who were either employees or experts. Defendants presented 19 witnesses, including former village officials, residents, and experts.

Prior to the court proceedings, hearings were held by the Cook County Zoning Board on May 9 and May 29, 1980, and June 10, 1980. The hearing covered 719 pages of transcripts. Plaintiffs presented five witnesses and Richton Park 12. In addition, 11 members of the public made unsworn statements. The zoning board recommended that the application to reclassify a portion of the subject property for a special use as a sanitary landfill be granted subject to certain conditions which plaintiffs accepted. The county board decided not to concur with the zoning board and voted to deny plaintiffs' application for rezoning and special use.

The record disclosed that the subject property was purchased in 1974 and was operated as a landfill for approximately two years, from September 1977 through September 1979, and the site has approximately eight years of remaining life expectancy. At the time of purchase the purchaser was aware that the existing zoning prohibited landfills on the subject property.

The majority opinion appears to rest on the self-contradictory nature of the findings of the trial court as stated herein and the statement of this court that "[w]hat we consistently fail to find in the record is any credible evidence of gain to the public by denying the special use of a sanitary landfill."

The oral findings of the trial court were based on the six factors set forth in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65, and the six special use standards in the zoning ordinance, section 12.10—7. In attempting to explain these findings the court commented as follows:

> "In other words, gentlemen, what I mean to say by those lines, 2, 3, 4 and 5, is that I don't believe, based on the evidence, I find on the evidence, that the operation of this special

use sanitary landfill will not endanger the public health, safety or general welfare.

Now, I continue at line 5 to say, 'But I cannot say that Sexton has shown, by a clear preponderance of the evidence, that this special use as a sanitary landfill will not be detrimental to the public health, safety or general welfare.' I mean that as it stands. So what I am saying is that this should be corrected to indicate that, and I have corrected it on the transcript attached to Mr. Houlihan's order, which I have signed, but I want that clearly understood so there is no dispute, that the language that I used in that order tracts the language of the special use ordinance of the County. So that you notice, when I finished up and made those statements, I was careful to tract that language.

So there is only, really, two aspects which, in my opinion, I have a question based on the evidence; and those are the aspects of the sanitary landfill being detrimental to the public health, safety or general welfare, and the aspect of the sanitary landfill being injurious to the use and enjoyment in the immediate vicinity [*sic*].

So only two aspects I have questions about, and that was basically because I wasn't satisfied, and that was the reason for my denying the sanitary landfill use.

MR. HOULIHAN: So correcting then, if I understand the Court accurately, we delete in the first sentence of Paragraph 1, the word 'not'; is that correct?

THE COURT: That's correct, I am trying to make it as clear as I can. It's a double negative the way I said it, and when I read it again, I know I wanted to—it might lead to some confusion in the Appellate Court. I don't want there to be any confusion."

It does appear that some confusion or contradiction may have resulted as reflected in the oral opinion of the court, but the trial court did re-emphasize that "I wasn't satisfied" from the evidence in the two matters under discussion.

It would appear that this court has two choices if the findings of the trial court are not clear or in conflict: first, to attempt to reconcile the conflicting findings and to ascertain the meaning of the trial court from the record; or second, to remand this cause with directions for additional clarification as to the findings. One may argue that under the complicated factual situation and conflicting testimony presented in this case that the better approach would be to remand this

cause for a resolution of the contested issues and not to substitute the judgment of this court for the trial court on disputed factual matters. The trial court is in a superior position to that of a reviewing court in such a situation, and the weight to be accorded testimony is a matter to be determined by the trial court. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.

Some of the testimony of defendants included the testimony of the former village planner for Richton Park from 1974-1978, Dudley Onderdonk, who emphasized that from an aesthetic point of view, the dust, debris and odors emanating from the landfill were a blighting influence. Urban planner Judson Allen indicated that on the question of visual pollution, both the general visual impact of the site from I-57, as well as the presence of the methane gas flares burning from the property would have a negative influence on the area and that the gas smells when it burns.

George Arquilla, a land developer in the south suburban area, and the principal developer of the Lakewood Subdivision and Lakewood Unit 14 Subdivision, the two developments immediately adjacent to this landfill site, testified that he began to market the area toward the end of 1978 and the early part of 1979 and sales dropped approximately 72% and one of the big problems was the landfill.

Other witnesses included neighboring home owners who testified based upon past experience as to the periodic and continuing presence of foul and offensive odors in the area as having an adverse effect on the quality of life. Nineteen other persons were present in court. The majority opinion has found that "the testimony of the local residents was inherently improper and should have been rejected in this regard."

Plaintiffs' witness, Richard Eldredge, a professional civil engineer and a consultant in waste management, testified that the purpose of the flaring is to burn the odors so that they are less noticeable. In response to questioning on the matter of odors he stated as follows:

"A. The practice of flaring gas at a landfill is for the purpose of odor control. The methane gas as it's emitted brings with the $CO_2$ and the malodorous gases which are about one percent of the contents of the gas generated, and the purpose of flaring is to incinerate, or burn these odors so that they are least noticeable.

Q. In spite of all that, it is possible for malodorous gases to escape and be smelled in a neighboring vicinity?

A. It is possible that someone would, at times, smell an odor in the vicinity, yes.

Q. And it's not an appealing odor, is it?

A. It depends upon whether you make your money that way or not, I guess.

Q. Well, for somebody who has to live around there, it's not an appealing odor, is it?

A. I would say not."

Other testimony included that of Frank Farrell, former village president of Richton Park from May 1973 until April 1981, who was questioned concerning community opposition to the proposed landfill and responded that "on two separate occasions, we received petitions signed by residents of the Village, in one instance I think about 2,000 signatures, and in the other approximately 900 signatures."

This court has not attempted to review or summarize all of the evidence presented at trial to support its conclusion or to support the statement that "we can find little evidence in the record to support the finding by the trial court that the sanitary landfill will be injurious to the use or enjoyment of other property in the immediate vicinity or that the landfill will be detrimental to the public health, safety, or general welfare."

As the record indicates, a great deal of disputed and conflicting evidence on crucial issues was heard and considered relating to the character of the subject property, the make-up of the surrounding neighborhood, the highest and best use of the land, the effect on valuations, the existing zoning and uses of nearby property, and the suitability of the site for a sanitary landfill. Both parties presented expert opinion testimony in support of the respective contentions resulting in a substantial difference of opinion. Where testimony is contradictory in a trail without a jury, the weight to be accorded testimony is a matter to be determined by the trial court and its findings will not be disturbed unless clearly against the manifest weight of the evidence. (See *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) The burden was on plaintiffs to prove by clear and convincing evidence that the proposed use was reasonable and that the denial of a special use application was arbitrary and unreasonable. (*Racith Corp. v. Zoning Board of Appeals* (1981), 95 Ill. App. 3d 716, 420 N.E.2d 620; *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 354 N.E.2d 899.) The trial court specifically found that based upon the evidence the plaintiffs had failed to discharge their burden. The results of the majority opinion serve to relieve plaintiffs of their burden and to suggest that an opposite conclusion, to permit the re-opening of the landfill, was apparent by clear and convincing evidence. (See *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 426

N.E.2d 1276.) I do not agree that this court should substitute its judgment on matters of proof as to particular facts and findings contrary to that of the trial court.

I find that the trial court's findings are amply supported by the record and were not clearly erroneous and this conclusion is warranted under the facts of this case. I therefore think that the judgment of the trial court denying the special use of a sanitary landfill should be affirmed.