WANDA JORDING, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Munson Transportation, Appellee).

Third District (Industrial Commission Division)   No. 3—92—0688WC

Opinion filed December 2, 1993.

Floyd C. Dailey, of Harvey & Stuckel, Chartered, of Peoria, for appellant.

John A. Maciorowski, of Stevenson, Rusin & Friedman, Ltd., of Chicago, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The employee, Wanda Jording (claimant), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) against Munson Transportation (employer) alleging that she sustained a work-related injury. Following a hearing, the arbitrator found a causal relationship between the claimant's condition and the accident of November 9, 1988. The arbitrator found that claimant was entitled to temporary total disability (TTD) benefits from January 17, 1989, through April 19, 1990, and from June 5, 1990, through August 19, 1990, that claimant's condition had reached a state of permanency, that no medical benefits would be awarded beyond February 6, 1991, and that claimant sustained 50% loss of use of the right arm and was therefore entitled to benefits under section 8(e). Upon review, the Industrial Commission (Commission) reduced the right arm loss of use to 30% but otherwise affirmed and adopted. On judicial review, the Commission's decision was confirmed.

Two issues are presented on appeal: (1) whether the Commission's award of permanency in the section 19(b) proceeding was contrary to law; and (2) whether the Commission's decision denying the claimant further temporary total disability and medical was against the manifest weight of the evidence.

We affirm in part and reverse in part.

On November 9, 1988, the claimant, a long haul co-truck driver, was en route to California and stopped in Nebraska to fuel up. As claimant slid down from the cab she noticed that she pulled a muscle or something in her back and shoulder. Claimant was treated by vari-

ous doctors, and the office notes, records, and correspondence of Drs. Russo, Mussey, and Matz are included in the record on appeal. Before the hearing, the following conversation took place:

"ARBITRATOR: Let the record show both sides are represented by counsel. The [section 19(b)] Request for Hearing form has been marked Arbitrator's Exhibit Number 1 showing issues in dispute of causal connection, if causal connection is established there is outstanding TT, outstanding medical, and nature and extent of the injury. Is that the issues in dispute?

MR. HARVEY [attorney for claimant]: Yes.

MR. MACIOROWSKI [attorney for employer]: Correct.

ARBITRATOR: And if I find this is a 19(b), or that she has not reached permanency, I will convert it over to a 19(b), if that's appropriate.

MR. MACIOROWSKI: That's agreeable."

Subsequently, the hearing was conducted and the arbitrator rendered the aforementioned findings and decision.

I

The appellant initially contends that because her application sought TTD pursuant to section 19(b), it was not proper for the arbitrator to rule on the issue of permanency.

The relevant section of section 19(b) (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(b)) states:

"(b) The Arbitrator shall make such inquiries and investigations as he or they shall deem necessary and may examine and inspect all books, papers, records, places, or premises *relating to the questions in dispute* and hear such proper evidence as the parties may submit.
* * *
The Arbitrator may find that the disabling condition is temporary and has not yet reached a permanent condition and may order the payment of compensation up to the date of the hearing, which award shall be reviewable and enforceable in the same manner as other awards, and in no instance be a bar to a further hearing and determination of a further amount of temporary total compensation or of compensation for permanent disability, but shall be conclusive as to all other questions except the nature and extent of said disability." (Emphasis added.)

In *Thomas v. Industrial Comm'n* (1980), 78 Ill. 2d 327, 399 N.E.2d 1322, the arbitrator awarded TTD benefits but found the

claimant failed to prove permanent disability. On appeal, the claimant argued that the arbitrator exceeded his authority under section 19(b) by entering a finding on permanent disability. The supreme court reversed, noting that the issues in dispute before the arbitrator were the amount of additional TTD, if any, and the nature and extent of the injury, if any. These were the issues stipulated to by the parties, and the claimant had not made any allegation relating to permanent disability. The court pointed out that claimant had introduced the reports of two physicians which concluded that claimant was unable to return to work, but expressed no opinion related to the issue of permanent disability. While these reports were in contrast to the employer's medical summaries that stated there was no evidence or residual impairment, the employer cannot unilaterally broaden the scope of the proceeding before the arbitrator by introducing evidence unrelated to issues presented in claimant's petition for immediate hearing. *Thomas*, 78 Ill. 2d at 334. See also *Jewel Cos. v. Industrial Comm'n* (1984), 125 Ill. App. 3d 92, 465 N.E.2d 935; *Brinkmann v. Industrial Comm'n* (1980), 82 Ill. 2d 462, 413 N.E.2d 390. But see *O'Neal Brothers Construction Co. v. Industrial Comm'n* (1982), 93 Ill. 2d 30, 442 N.E.2d 895 (permanent award upheld where the parties did not request an immediate or limited hearing, and the record was devoid of any affirmative indication that the parties wished to limit themselves to the issue of temporary total disability).

In an attempt to distinguish *Thomas*, the employer *sub judice* contends that because the claimant did not raise any objection to the arbitrator's statement regarding converting the claim, the claimant agreed that the arbitrator could render a decision as to the issue of the nature and extent of the injury if the arbitrator felt that the condition had reached a state of permanency.

It appears that the employer is arguing that if the arbitrator ruled on the nature and extent of the claimant's injury, then the issue of permanency could also be decided based on the evidence. This position, however, is contrary to *Thomas*.

■ Additionally, the plain language of section 19(b) indicates that the arbitrator may only review evidence that relates to the questions in dispute. The claimant's section "19(b) REQUEST FOR HEARING" states that "[t]he question in dispute is the nature and extent of the injury: caustion [*sic*], TTD, medical." There is no mention of permanent disability benefits.

Other than the employer's unsupported contention that there was some vague conversation involving the arbitrator and the parties,

there is no evidence that either party was prepared to argue the issue of permanent disability.

We do not conclude that what the arbitrator did cannot be done, but only that if such proceedings are to take place, the intention of the parties must be clear and there must be support found in the record for such action. In the case *sub judice*, there is neither. The quotation from the arbitration hearing is at best ambiguous. The arbitrator began the proceeding by clearly stating the issues in dispute. These were agreed to by both parties. The employer asserts that because of a pretrial conference, of which no evidence is included in the record, the arbitrator's remark that she would convert the claim over to section 19(b) somehow makes sense. This may very well be the case. However, without more information, it is difficult to tell what the arbitrator meant. Simply put, as stated in *Newberry v. Industrial Comm'n* (1930), 341 Ill. 554, 173 N.E.2d 472, the charge or statement of the claim and the findings should be consistent.

Therefore, based upon the above reasons, the Commission's award of permanency in the section 19(b) proceeding was contrary to law and is reversed.

II

In *Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 442-43, 559 N.E.2d 1034, the court stated:

> "It is the province of the Commission to weigh and resolve conflicts in testimony, including medical testimony, and to choose among conflicting inferences therefrom. [Citations.] It is only when the decision of the Commission is without substantial foundation in the evidence or its finding is manifestly against the weight of the evidence that the findings of the Commission should be set aside."

(See also *O'Dette v. Industrial Comm'n* (1980), 79 Ill. 2d 249, 253, 403 N.E.2d 221.)

> "A reviewing court cannot reject or disregard permissible inferences drawn by the Commission because different or conflicting inferences may also be drawn from the same facts nor can it substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence." (*Martin v. Industrial Comm'n* (1992), 227 Ill. App. 3d 217, 219, 591 N.E.2d 108.)

It has been observed that " '[t]he manifest weight of the evidence is that which is "the clearly evident, plain and indisputable weight of the evidence." [Citations.] In order for a finding to be contrary to the

manifest weight of the evidence, an opposite conclusion must be clearly apparent.' " (*Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 54, 426 N.E.2d 1276, quoting *In re Application of County Collector* (1978), 59 Ill. App. 3d 494, 499, 375 N.E.2d 553.) Finally, " '[i]f the undisputed facts permit an inference either way *** then the Commission alone is empowered to draw the inference and its decision as to the weight of the evidence will not be disturbed on review.' " *Morgan Cab Co. v. Industrial Comm'n* (1975), 60 Ill. 2d 92, 97, 324 N.E.2d 425, quoting *Greenberg v. Industrial Comm'n* (1961), 23 Ill. 2d 106, 108, 178 N.E.2d 646.

In *Brinkmann v. Industrial Comm'n*, 82 Ill. 2d at 467, the court stated:

"Temporary total disability has been defined as that condition which ' "exists from the time an injury incapacitates an employee for work until such time as he is as far recovered or restored as the character of the injury will permit." ' [Citations.] Thus, a claimant is entitled to benefits during the period between the injury and the recovery or stabilization of his condition, during which there is typically a total loss of wages. [Citation.] The determination of when recovery or stabilization of condition occurs is a question of fact to be determined by the Industrial Commission, and unless its findings are contrary to the manifest weight of the evidence they will not be set aside on review."

■ In the case *sub judice*, the claimant contends that there is no indication in the record that the claimant's condition had reached a state of permanency. We disagree.

Dr. Matz' report dated February 6, 1991, states: "There is no need for any further treatment in this case. Her condition is stable and there is no indication that she is suffering from any progressive neurologic derangement."

Dr. Mussey's report dated November 8, 1989, states: "There is little likelihood that this will improve any further. *** I would feel she could drive a truck if the truck is one which would allow her easy access to the cab. She should not have to load or unload the truck."

Although Dr. Russo apparently saw the claimant after January 16, 1991, the January 16, 1991, report is the latest report included in the record. In that report, Dr. Russo stated:

"Therapy, if anything at times seemed to be exacerbating her symptoms. The therapist did raise the question of discontinuing her outpatient treatment and I do concur with this at this time. *** I plan to recheck her in a few weeks. If she has not shown

substantial improvement at that time, we will have her evaluated for stellate ganglion block [injection of local anesthetic solution in the vicinity of the ganglion]. I continue to be of the opinion that she cannot return to work at the present time and really raise the issue as to whether this woman will ever be able to tolerate the job which involves repetitive use of the right upper extremity even on relatively light activities."

On February 18, 1991, Dr. Russo wrote on prescription paper that "Ms. Jording is unable to return to work at the present time, do not anticipate return in the foreseeable future."

Finally, the claimant testified that on February 18, 1991, Dr. Russo told her that there was nothing further that could be done for her using medication or any other treatment.

The only physician's report that possibly favors the claimant's position is that of Dr. Russo. However, it was for the Commission to decide upon which doctors' opinions to rely. As such, we cannot say that the Commission's decision determining the extent of temporary total disability is against the manifest weight of the evidence.

Affirmed in part and reversed in part.

McCULLOUGH, P.J., and WOODWARD, SLATER, and RARICK, JJ., concur.