FRANK ROSENBERG, INC.,
Plaintiff–Appellant,

v.

TAZEWELL COUNTY, a body politic,
Jerry Appenzeller, James Carius, James
Dawson, Fred Ertmoed, Kenneth Eu-
banks, Thomas Fabry, Robert B. For-
syth, Robert Lutz, Larry Noreuil, Wil-
ma O'Donnell, and Ralph Paluska, in-
dividually and as members of the Taze-
well County Board, Defendants–Appel-
lees.

No. 88–2806.

United States Court of Appeals,
Seventh Circuit.

Argued March 29, 1989.

Decided Aug. 11, 1989.

Brian D. Mooty, Julian E. Cannell, Kav-
anagh, Scully, Sudow, White & Frederick,
Peoria, Ill., for Frank Rosenberg, Inc., an
Illinois corporation.

John E. Cassidy, Cassidy & Mueller, Peo-
ria, Ill., Stewart J. Umholtz, Office of the
State's Atty. of Tazewell County, Pekin,
Ill., for defendants-appellees.

Before POSNER, FLAUM, and
RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiff-appellant Frank Rosenberg, Inc. (Rosenberg) brought this section 1983 action against Tazewell County, Illinois and individual present and former members of the Tazewell County Board (County Board). At the heart of Rosenberg's complaint is a 1986 County Board denial of a siting permit for a regional pollution control facility. The district court dismissed the action for lack of standing. Rosenberg filed a timely appeal.[1] We now affirm.

## I.

## BACKGROUND

### A. *Facts*

In 1985, Rosenberg sought to sell land known as Rosenberg Industrial Park to Kirby–Coffman, Inc. (Kirby). Rosenberg Industrial Park formerly served as a municipal landfill for waste collected in Tazewell County; it is located one mile south of Pekin, in an unincorporated area of Tazewell County. Three letters from Kirby to Rosenberg allegedly form a contract for the sale of Rosenberg Industrial Park at a price of $2,500,000.[2] However, Kirby's obligation to purchase the land was subject to several conditions precedent, one of which was the signing of a contract, by Kirby or one of its affiliates, to construct or partic-

ipate in the construction of a waste-to-energy facility or other co-generation facility providing steam or energy. The letters also evidence that the parties understood that no firm funding commitment for such a project was possible until all necessary permits and contracts had been obtained.

The waste-to-energy facility was intended for a ten-acre tract located within Rosenberg Industrial Park. Under the Illinois Environmental Protection Act (the Act), Ill.Ann.Stat. ch. 111½, para. 1001 et seq., the proposed waste-to-energy facility was considered a "regional pollution control facility." *See* Ill.Ann.Stat. ch. 111½, para. 1003.32. Therefore, the proposed facility siting was subject to approval by various state and local authorities. Thus, before Kirby could begin construction on a waste-to-energy facility in satisfaction of a condition precedent to its contract with Rosenberg, it needed approval of the facility site. Kirby petitioned the Illinois Environmental Protection Agency, which gave initial approval to the proposed waste-to-energy facility.

Having cleared this first hurdle, Kirby next submitted an application to the County Board for its approval of the proposed facility location within Rosenberg Industrial Park. That application stated that Kirby had complied with all of the written application and notice requirements of the coun-

1. Although the district court entered a memorandum opinion, it failed to enter a separate judgment pursuant to Federal Rule of Civil Procedure 58. Ordinarily, this separate judgment must be entered before there is a final appealable order over which we may exercise jurisdiction. *See United States v. Indrelunas*, 411 U.S. 216, 221–22, 93 S.Ct. 1562, 1564–65, 36 L.Ed.2d 202 (1973); *Rosser v. Chrysler Corp.*, 864 F.2d 1299 (7th Cir.1988); 28 U.S.C. § 1291. When a separate Rule 58 judgment has not been entered, however, this court may nevertheless hear the appeal if: "the district court clearly intended that the opinion and order from which an appeal was taken would represent the final decision in the case, a judgment of dismissal was entered in the clerk's docket, and the prevailing party in the district court did not object to the taking of an appeal in the absence of a separate judgment." *Rosser*, 864 F.2d at 1305; *Banker's Trust v. Mallis*, 435 U.S. 381, 387, 98 S.Ct. 1117, 1121, 55 L.Ed.2d 357 (1978). All three criteria are satisfied here. *See* Appellees' Br. at 8–11;

Reply Br. at 2. Moreover, "it is plain that the complaint will not be amended." *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 463 (7th Cir.1988). Accordingly, we have jurisdiction to hear the appeal.

2. *See* R.6 at Ex. A, B, & C. According to the complaint, the contract was formed as of the second letter, dated February 14, 1986. *See* R.1 at 4, ¶ 13. Both this letter, and an earlier one dated September 23, 1985, are subject to several explicit conditions. One condition was "successfully completing the necessary contractual arrangements and funding of the planned ethanol production facility." A third letter, dated July 1, 1986, further conditioned the terms of the sale, stating that a third party "has committed *arranging* the funding for the facility *when all the necessary permits and contracts are in place* that assure financial feasibility of the project. *As you know, a firm funding commitment cannot be obtained until that is in hand.*" R.6 at Ex. C (emphasis supplied).

ty board approval provision of the Act, *see* Ill.Ann.Stat. ch. 111½ para. 1039.2, and therefore, the proposed facility to accept, handle, and incinerate municipal waste merited County Board approval. On July 21, 1986, the County Board held a public hearing at which Kirby presented oral testimony and written exhibits addressing the six criteria detailed in section 39.2 of the Act. *Id.*

On August 25, the County Board executive committee recommended that the full County Board approve Kirby's siting application. Two days later, however, the full County Board rejected the approval request by a vote of 14–7. On September 25, the County Board reconsidered its vote of August 27, and, by a vote of 11–10, again rejected Kirby's siting application. Voting against the application were defendant County Board members Appenzeller, Carius, Dawson, Ertmoed, Eubanks, Fabry, Forsyth, Lutz, Noreuil, O'Donnell, and Paluska. In conjunction with its September 25 vote, the County Board made findings of fact supporting its denial of the site location. *See* R.1 at Ex. G; *see also* Ill.Ann. Stat. ch. 111½, para. 1039.2(e) ("Decisions of the county board ... are to be in writing, specifying the reasons for the decision."). Kirby did not appeal the County Board's decision to the Illinois Pollution Control Board or seek a writ of mandamus from the Illinois circuit court.

In a letter dated October 27, 1986, Kirby informed Rosenberg that, due to the County Board's refusal to approve the facility siting application, Kirby had ceased all its efforts relating to the construction of a waste-to-energy facility at the Rosenberg Industrial Park. Accordingly, Kirby and Rosenberg did not consummate the sale of Rosenberg Industrial Park for $2,500,000.

**B.** *Decision of the District Court*

Following the breakdown of the sale, Rosenberg brought this section 1983 suit alleging that:

29. The refusal of the Tazewell County Board to approve the siting application of Kirby-Coffman, Inc. had no reasonable basis, was against the manifest weight of the evidence presented to the Board, and was an arbitrary and capricious action that *amounted to a confiscation of the Plaintiff's property in violation of the Fifth and Fourteenth Amendments of the United States Constitution.*

30. The Defendant members of the Tazewell County Board who voted to deny the location request of Kirby-Coffman, Inc., acted in their individual and official capacities in an arbitrary and capricious manner with a deliberate and reckless disregard to the Plaintiff's constitutional rights, and as a consequence the Plaintiff *was deprived of its property in violation of the Fifth and Fourteenth Amendments of the United States Constitution.*

R.1 at 7 (emphasis supplied).

The district court dismissed Rosenberg's complaint for lack of standing. *Frank Rosenberg, Inc. v. Tazewell County,* No. 87–1289 (C.D.Ill. Aug. 31, 1988); R.8 [hereinafter Mem.op.]. In the district court's view, Rosenberg lacked standing because the agreement to purchase "gave rise only to an expectation that the agreement would be consummated," Mem.op. at 11, and therefore did not constitute "injury in fact." *Id.* "[A]t no point," the district court pointed out, did Rosenberg "have any state law interest in the issuance of the permit." *Id.*

II.

ANALYSIS

Before this court, Rosenberg submits that the district court erred in holding that he lacked standing to bring this action. We review *de novo* the district court's determination on standing. *See Waste Management of N. Am., Inc. v. Weinberger,* 862 F.2d 1393, 1396 (9th Cir.1988). Moreover, "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations in the complaint, and must construe the complaint in favor of the complaining party."

*Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

## A. *The Controlling Principles*

The concept of standing has endured a long and difficult developmental period. Just a little more than twenty years ago, in *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), Chief Justice Warren, noting his agreement with Professor Freund, described standing as surrounded by "complexities and vagaries"—one of " 'the most amorphous [concepts] in the entire domain of public law.' " 392 U.S. at 98–99 & n. 18, 88 S.Ct. at 1951–52 & n. 18 (quoting *Hearings on S. 2097 Before the Subcomm. on Constitutional Rights of the Senate Judiciary Comm.,* 89th Cong., 2d Sess. 465, 498 (statement of Prof. Paul A. Freund)). It would be a mistake, however, for the bench and bar to regard this important concept as an intellectual no-man's land today. Beginning with *Flast,* the last two decades have witnessed significant intellectual refinement of this most important concept, and "standing concepts have gained considerable definition from developing case law." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). The Supreme Court has identified for our guidance the underlying policy concerns upon which this concept is built; it has also set forth an analysis embodying those policy concerns. It is our task to apply that analysis in the cases before us.

■ The policy concerns can be stated rather succinctly. In *Flast,* the Supreme Court suggested that courts begin their analysis of a standing problem by recalling that standing is really a conceptual subdivision of a broader jurisdictional requirement—the "case or controversy" requirement of Article III. This constitutional limitation on the power of federal courts embodies, noted the Court in *Flast,* "two complementary but sometimes different limitations." 392 U.S. at 95, 88 S.Ct. at 1949–50.

In part those words limit the business of federal courts to questions presented in an adversary context and in a form his-torically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.

*Id.* Standing is the aspect of justiciability that focuses on the qualifications of the party bringing the suit; the essence of the inquiry is "whether the litigant is entitled to have the court decide on the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *see also FMC Corp. v. Boesky,* 852 F.2d 981, 987–88 (7th Cir.1988); *Freedom From Religion Foundation, Inc. v. Zielke,* 845 F.2d 1463, 1467 (7th Cir.1988); *Shakman v. Dunne,* 829 F.2d 1387, 1393 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1026, 98 L.Ed.2d 991 (1988); *Peoples Gas, Light & Coke Co. v. United States Postal Serv.,* 658 F.2d 1182, 1188–89 n. 3 (7th Cir.1981). The Supreme Court has mandated that, in undertaking this inquiry, the basic constitutional analysis comprises three elements: "A plaintiff must allege [1] personal injury[, 2] fairly traceable to the defendant's allegedly unlawful conduct and[, 3] likely to be redressed by the requested relief." *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324; *see also Valley Forge College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (at an "irreducible minimum," a party seeking adjudication in an Article III court must establish "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant"); *FMC,* 852 F.2d at 987; *Shakman,* 829 F.2d at 1394.

## B. *The Principles Applied to this Case*

■ To attain standing in federal district court, the plaintiff need not only have sustained an injury, but an injury *personal* to it. *See Allen,* 468 U.S. at 751, 104 S.Ct.

at 3324; *Freedom From Religion Foundation,* 845 F.2d at 1467 ("at a minimum the appellants must be able to establish that *they* suffered a distinct and palpable injury as a result of the actions of the City") (emphasis supplied). Here, the record plainly demonstrates that the County Board rejected *Kirby's* application, not Rosenberg's. Under the contractual relationship between them, it is clear that it was Kirby's obligation to attempt to secure the appropriate permits. Indeed, the only expectation that Rosenberg could have had under the agreement was that Kirby would purchase the land if its efforts in securing the permits were successful. This expectation hardly transforms Kirby's lack of success into a "distinct and palpable injury," *Warth,* 422 U.S. at 490, 95 S.Ct. at 2197, to Rosenberg.

Rosenberg, in an effort to escape the application of this principle, notes that "injury in fact," in the constitutional sense we have employed the term in the foregoing discussion, has been considered sufficiently broad to permit, in some instances, a litigant to assert the rights of another. It notes that, for instance, in *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), a seller was permitted to assert the right of her customers to purchase beer. *See also Secretary of State v. Joseph H. Munson Co.,* 467 U.S. 947, 958–59, 104 S.Ct. 2839, 2847–48, 81 L.Ed.2d 786 (1984) (corporation may assert first amendment rights of charity it represents as a professional fundraiser); *Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 242–43, 103 S.Ct. 2979, 2982, 77 L.Ed.2d 605 (1983) (hospital may assert rights of patient for payment of recovery costs by city); *Carey v. Population Serv. Int'l,* 431 U.S. 678, 682–85, 97 S.Ct. 2010, 2014–16, 52 L.Ed.2d 675 (1977) (corporation selling contraceptive devices may assert right of potential customers to purchase items).

We cannot accept Rosenberg's submission. Rosenberg is correct in asserting that, in some circumstances, the Supreme Court has permitted a litigant to assert the *rights* of another person. However, the Article III requirement of injury in fact remains and, as we have noted earlier, Rosenberg has not met it. *See Barrows v. Jackson,* 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953) ("The common thread underlying both [constitutional and prudential standing] requirements is that a person cannot challenge the constitutionality of a statute unless he shows that he himself is injured by its operation.") (footnote omitted).[3] *Cf. Warth,* 422 U.S. at 501, 95 S.Ct. at 2206 ("Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself...").

Even if Rosenberg met the threshold requirement of a personal injury, it would not be an acceptable litigant for the assertion of Kirby's rights. It is well established that, with regard to a litigant's raising the rights of a third party, federal courts have imposed upon themselves "a salutary 'rule of self-restraint' designed to minimize unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative." *Craig,* 429 U.S. at 193, 97 S.Ct. at 455. Accordingly, federal courts, before permitting third-party standing, have examined closely the relationship of the litigant and the third party to determine whether proceedings conducted by the litigant will fulfill the underlying policy concerns of the standing requirement. The principal concern, of course, is whether "the applicable constitutional questions have been and continue to be presented vigorously and 'cogently.'" *Craig,* 429 U.S. at 194, 97 S.Ct. at 455 (quoting *Holden v. Hardy,* 169 U.S. 366, 397, 18 S.Ct. 383, 390, 42 L.Ed. 780 (1898)).

---

3. In distinguishing between the nonconstitutional and the constitutional aspects of standing, we have stated that:

> Prudential, or nonconstitutional standing limitations, on the other hand, are "essentially matters of judicial self-governance" designed

by courts to avoid abstract questions of wide public significance that are better left to other governmental institutions for resolution.

*FMC,* 852 F.2d at 987 (quoting *Warth,* 422 U.S. at 499–500, 95 S.Ct. at 2205–06).

Here, the relationship between Rosenberg and Kirby simply does not ensure that the issue will be argued in such a manner. The defendants' action did not deprive Rosenberg of its land or of any potential customer, other than Kirby. Unlike the beer vendor in *Craig,* whose business was substantially impacted by a continuing ban on an entire class of potential patrons, and the book vendors in *Virginia v. American Booksellers,* 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988), whose business was substantially affected by a law designed to restrict juveniles' access to pornography, Rosenberg does not allege that the County Board's decision will have a continuing impact on its ability to sell Rosenberg Industrial Park. Under the language of the County Board's resolution, proposals for other waste-to-energy facilities are not precluded, nor are alternative uses for the Park. *See* R.1 at Ex. G. Nor does the complaint in any way suggest, whatever the merits of the allegations with respect to the conduct of the defendants, that Rosenberg can present any constitutional challenges with the clarity and comprehensiveness necessary for definitive adjudication. As Judge Posner wrote in *People Organized for Welfare and Employment Rights v. Thompson,* 727 F.2d 167, 173 (7th Cir.1984):

> Another problem when the immediate injury from alleged misconduct is suffered by someone other than the plaintiff is that the suit may lack, not adversary zeal—that it may have in great abundance—but the concrete factual setting that so concentrates the judicial mind. And, a related point, the ability of the actual victim to protect his legal rights may be impaired by the activity of his self-appointed protectors.

Rosenberg never joined in Kirby's application to the County Board, nor did Rosenberg request that the County Board reconsider its action. Indeed, Kirby shouldered the complete burden of applying to the various authorities for a siting permit. Finally, we note that Kirby suffered from no impediment to the vindication of its own rights, yet it did nothing. Indeed, after the County Board's decision on reconsideration of the application, Kirby did not seek administrative or state-court review, nor did it join in this action brought by Rosenberg in the district court. *See Solomon v. City of Evanston,* 29 Ill.App.3d 782, 331 N.E.2d 380, 386–87 (1975) (mandamus available to review municipal officers' decision). In short, Rosenberg is simply not in a position to "sharpen[ ] the presentation of issues" and provide "illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).[4]

## CONCLUSION

The district court correctly concluded that the plaintiff lacked standing to bring this section 1983 action.[5] Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

4. In determining that Rosenberg has suffered no cognizable injury, we do not imply that Rosenberg necessarily possesses a protectible property interest in the site permit. *See* Mem.op. at 10. The appellant claims that its property interest as a contract seller of land is protected by both the fourteenth, *see* Appellant's Br. at 11, and fifth amendments. *See* Reply Br. at 4. The district court explicitly rejected Rosenberg's due process contention, stating that the Board's denial of Kirby's permit application was, at most, an "indirect deprivation" of Rosen-

berg's contractual benefit that "does not rise to the level of an unconstitutional property deprivation." Mem. op. at 10. Our disposition makes it unnecessary to address the question.

5. The individual defendants-appellees also ask this court to determine whether they enjoy absolute immunity. Appellees' Br. at 18. The district court did not reach that issue and our affirmance on the standing issue renders unnecessary our reaching it today.