**LOVE CHURCH, an Illinois not-for-profit corporation, Plaintiff–Appellee, Cross–Appellant,**

v.

**CITY OF EVANSTON, an Illinois municipal corporation, Defendant–Appellant, Cross–Appellee.**

Nos. 88–2960, 88–3065.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 6, 1989.

Decided March 1, 1990.

John W. Mauck, Richard Baker, Thomas Cameron, Mauck & Baker, Chicago, Ill., for plaintiff-appellee, cross-appellant.

Jack A. Siegel, Siegel & Warnock, Chicago, Ill., for defendant-appellant, cross-appellee.

Before BAUER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.

BAUER, Chief Judge.

The City of Evanston appeals a judgment providing injunctive relief and monetary damages to the Love Church under 42 U.S.C. § 1983 for violations of the right to equal protection under the fourteenth amendment. Appellants argue that Love Church lacked standing to bring this claim and, in the alternative, that summary judgment for plaintiffs was inappropriate. Appellees have filed a cross-claim declaring that the injunctive relief granted was too narrow to address properly the alleged injury suffered by Love Church. Because we find that plaintiff lacked standing to bring this action, we vacate the judgment below and remand with directions to dismiss this claim.

I.

Marzell Gill founded Love Church, a fundamentalist, Pentacostal Church, in Evanston, Illinois, in June of 1985.[1] Pastor Gill and his family began holding services at the Fleetwood–Jourdaine Community Center, a city-owned facility, in the summer of 1985. Approximately eleven people, including Pastor Gill's family, attended these meetings. Later services were moved to an auditorium in the Washington School in southwest Evanston. Six people attended these services. When school began in September of 1985, the Gills moved their church to a meeting room in the Evanston

---

1. The district court described Love Church as a "congregation comprised of approximately 30 young 'working class' black men and women residing in and around Evanston." *Love Church v. Evanston,* 671 F.Supp. 508, 509 (N.D. Ill.1987) (footnote omitted). The court further noted that Love Church "is not affiliated with any denomination, although it believes in traditional Christian teachings." *Id.* Appellees brief, however, describes Love Church as Pentacostal in nature. The discrepancy is immaterial for purposes of this appeal.

Holiday Inn. The Love Church continued to meet in the Holiday Inn until March of 1986. The final service held there, Easter Sunday of 1986, attracted 250 people, the highest attendance the church was ever to achieve.

From March through October of 1986, Pastor Gill held services at the Ridgeville Park District in south Evanston. Attendance at this site averaged 35 to 40 people each Sunday. During that time, Gill began to look unsuccessfully for permanent facilities for his congregation. In the fall of 1986, the Ridgeville Park District informed Gill that the rent would be increased. Gill also testified that Ridgeville authorities informed him that they would require a city permit for future church use of the facilities even if this use was only temporary. Gill, however, never applied for the permit. In November and December of 1986, the Love Church held its services in the Gills' two-bedroom apartment in Evanston. Finally, in January of 1986, the Love Church began meeting in the Skokie Holiday Inn.

On December 17, 1986, Pastor Gill and the Love Church filed the complaint from which this appeal stems. The complaint alleged that the Evanston Zoning Ordinance requiring churches to apply for special use permits had made it impossible for the Love Church to secure permanent meeting facilities.

The Evanston Zoning Ordinance (the "Ordinance") does not limit the location of church facilities to specifically designated areas. Ordinance §§ 6–5–2(b); 6–7–2–2; 6–7–3–16(B).[2] Rather, a church, synagogue, or other religious institution may be located anywhere in the city, regardless of the underlying zoning purpose, provided the interested parties apply for and receive a special use permit. Id.[3] To secure a permit, an applicant must file a detailed plan for the use of the facilities and pay a fee of between $370 and $480. Id. The Evanston Zoning Board then holds a hearing and issues a decision. § 6–12–4(B). The entire process takes between four and six months. The Ordinance provides for misdemeanor fines of $25 to $500 a day for each violation. § 6–11–13.

Love Church and Pastor Gill claimed that, due to the requirements of the Ordinance, they were unable to obtain a lease for their church. Thus, they filed suit under 42 U.S.C. § 1983 for injunctive relief, declaratory judgment and compensatory damages. Plaintiffs alleged, inter alia, that Evanston had violated their first amendment right to the free exercise of their religious beliefs as well as their rights to equal protection and due process under the fourteenth amendment. Evanston subsequently filed a motion to dismiss these claims.

On March 3, 1987, Judge Grady issued a memorandum opinion partially granting Evanston's motion to dismiss. Initially addressing the question of standing, Judge Grady held that the Love Church had alleged sufficient economic hardship under the Ordinance to establish standing. However, Pastor Gill was dismissed as a plaintiff for lack of standing since his claims simply derived from the independent claims of his church. Explaining its reasoning, the district court stated:

> Evanston's ordinance is presumptively valid. *Cosmopolitan National Bank v. County of Cook,* 116 Ill.App.3d 1089, 1094 [72 Ill.Dec. 564–569], 452 N.E.2d 817, 822 (1st Dist.1983). Plaintiffs have neither leased property nor applied for a special use permit. We presume Evanston will fairly apply the ordinance; if plaintiffs apply for a permit at an appropriate site, a permit presumably will issue.

---

**2.** By contrast, some public facilities in Evanston are confined to designated "commercial" or "manufacturing" sections of the city under the Evanston Zoning Ordinance. These include hotels, meeting halls, music schools, funeral homes, and movie theatres. While these facilities do not require special use permits to operate, they may operate in only limited designated areas. *See Love Church,* 671 F.Supp. at 514.

**3.** Churches are not singled out for this treatment. Evanston also requires special use permits for libraries, museums, and art galleries. Ordinance §§ 6–5–2(b); 6–7–2–2; 6–7–3–16(B); *See also Love Church,* 671 F.Supp. at 510 & n. 3.

671 F.Supp. at 511. Turning to the remaining substantive claims, the district court dismissed plaintiff Love Church's first amendment and due process challenges. The equal protection claims, however, were allowed to stand. Judge Grady then directed Evanston to provide a justification for the disparate treatment of religious organizations under its Ordinance.

Following additional briefing by the parties, the court entered summary judgment for plaintiffs on the equal protection claims on September 3, 1987. *Love Church v. Evanston*, 671 F.Supp. 515 (N.D.Ill.1987). The court held that Evanston improperly applied a different set of zoning requirements to churches and religious facilities than similarly situated facilities such as movie theatres, funeral homes, hotels, and community centers. These buildings, the court stated, were capable of creating the same traffic, parking, and safety concerns as churches, yet they were not required to obtain special use permits. Evanston had not provided a compelling justification for this distinction. Thus, Love Church's right to equal protection was violated. The court then requested additional briefing prior to determining damages or any injunctive relief.

Complicating the court's assessment of the appropriate relief was Love Church's continued inability to secure permanent facilities. The court noted with some frustration at a hearing on September 22, 1987:

> We do not want ... this case for their own entertainment. This is a real life lawsuit. I have treated it as one from the beginning and I still regard it as such. So let's get down to brass tacks and see what it is you people (Love Church) want to do.

On March 15, 1988, nearly 15 months after the onset of this litigation, Love Church finally entered into a lease for space at 823 Davis Street in Evanston. The district court entered an injunction on that date barring Evanston from requiring a special use permit at that site.

Finally, on August 22, 1988, following several days of hearings and additional briefing by the parties, the court assessed damages against Evanston in the amount of $17,782.89. In his memorandum opinion, Chief Judge Grady noted that, in determining the level of damages in this case, "(m)ore than the usual degree of speculation is involved." Nonetheless, the district court held that a reasonable estimate was possible and found that Love Church was entitled to these damages as compensation for lost contributions, musical services and the costs of general disruption and inconvenience. Evanston subsequently appealed this judgment. For the following reasons we now vacate that judgment.

## II.

Our threshold determination on this appeal is whether plaintiff Love Church has proper standing to bring this suit. As the Supreme Court has firmly stated, "of one thing we may be sure: Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Valley Forge College v. Americans United for the Separation of Church and State*, 454 U.S. 464, 475–76, 102 S.Ct. 752, 760–61, 70 L.Ed.2d 700 (1982). Constitutional standing is limited to actual "cases" or "controversies." For, as has often been recognized, "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). If such a case or controversy is lacking, the district court cannot properly exercise jurisdiction, and our role on appeal is merely to correct this error—we may not reach the merits. *Bender*, 475 U.S. at 541, 106 S.Ct. at 1331; *Foster v. Center Township of LaPorte County*, 798 F.2d 237, 241 (7th Cir.1986). In its initial memorandum opinion in this matter, the district court held that Love Church had standing to litigate its claim. For the reasons explained below, we disagree.

The concept of standing does not lend itself easily to strict rules and facile application. Yet, the Supreme Court has recog-

nized certain constitutional and prudential limitations on its exercise. *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). As the Court stated in *Valley Forge*

> at an irreducible minimum, article III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 [99 S.Ct. 1601, 1608, 60 L.Ed.2d 66] (1979), and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision,' *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976).

454 U.S. at 472, 102 S.Ct. at 758. *See also Franchise Tax Board of California v. Alcan Aluminium Limited,* —— U.S. ——, ——, 110 S.Ct. 661, 663, 107 L.Ed.2d 696 (1990); *Meese v. Keene,* 481 U.S. 465, 476, 107 S.Ct. 1862, 1868, 95 L.Ed.2d 415 (1987); *Bender,* 475 U.S. at 542, 106 S.Ct. at 1331; *Frank Rosenberg, Inc. v. Tazewell County,* 882 F.2d 1165, 1168 (7th Cir.1989). In order to make our determination on the issue of standing, therefore, we must focus on the qualifications of the party bringing the suit rather than the underlying merits of the case. Our review of the district court's determination of standing is *de novo.* *See Frank Rosenberg, Inc.,* 882 F.2d at 1167; *Waste Management, Inc. v. Weinberger,* 862 F.2d 1393, 1396 (9th Cir. 1988). Further, we are required, as was the district court in reviewing a motion to dismiss for want of standing, to "accept as true all material allegations in the complaint, and construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Frank Rosenberg, Inc.,* 882 F.2d at 1167–68.

Reviewing the facts before us with these principles in mind, we must determine whether Love Church has (1) suffered personal injury; (2) fairly traceable to the defendant's allegedly unlawful conduct; and (3) likely to be redressed by the requested relief. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Frank Rosenberg,* 882 F.2d at 1168; *FMC Corporation v. Boesky,* 852 F.2d 981 at 987 (7th Cir.1988); *Shakman v. Dunne,* 829 F.2d 1387, 1394 (7th Cir.1987). The Supreme Court has also noted that plaintiff's alleged injury must be more than a generalized grievance. *See Valley Forge,* 454 U.S. at 475, 102 S.Ct. at 760. The complaint must describe a "distinct and palpable" injury. *See Meese v. Keene,* 481 U.S. 465, 472, 107 S.Ct. 1862, 1867, 95 L.Ed.2d 415 (1987); *Warth,* 422 U.S. at 490, 95 S.Ct. at 2197; *Frank Rosenberg, Inc.,* 882 F.2d at 1168–69; *see also Freedom from Religion Foundation, Inc. v. Zielke,* 845 F.2d 1463, 1467 (7th Cir.1988). Plaintiff cannot allege harm which is merely "abstract" or "conjectural" or "hypothetical." *See Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983); *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

Love Church claims that due to the Evanston Zoning Ordinance, they have been unable to locate permanent facilities for their congregation. In support of this allegation, Love Church offers the affidavit of Pastor Gill stating that on four occasions suitable rental properties were unavailable solely due to the technical requirements of the special use permit. Gill's affidavit does not set forth where these properties were located. Nor does he explain what constitutes "affordable" rent. Significantly, the record does not contain any affidavits from landlords refusing to rent to Love Church. Even accepting Pastor Gill's allegations as true, as we must, they simply do not demonstrate a "distinct and palpable injury" for purposes of establishing standing.

The Supreme Court discussed the economic ramifications of zoning decisions in *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In *Warth,* petitioners claimed that due to the exclusionary policies of Penfield, New York, they were unable to obtain low- and moderate-income housing in that municipality. Accepting as true petitioners allegations of

exclusionary acts by local officials, the Court denied standing, stating:

> Petitioners here ... rely on little more than the remote possibility, unsubstantiated by allegations of fact, that their situation might have been better had respondents acted otherwise, and might improve were the court to afford relief.

422 U.S. at 507, 95 S.Ct. at 2210. Similarly, Love Church relies on the mere possibility that, absent the Ordinance, it could have more easily acquired rental property in Evanston. Such speculative claims cannot constitute distinct and palpable injury for purposes of standing. Claims of such vague economic harm are precisely the type of "abstract" or "conjectural" allegations spurned by the Supreme Court in *Warth*. Love Church never applied for a special use permit, nor was threatened with punishment for operating a church facility in violation of the Ordinance. Thus, any alleged fear of enforcement or increased difficulty in securing housing does not present any real controversy before the court.

Love Church has undoubtedly had difficulty acquiring rental property for its ministry and congregation. This difficulty has caused much hardship and inconvenience for all concerned. Yet, even accepting this as "injury" for purposes of standing, Love Church has failed to show how its claim satisfies the second prong of the standing inquiry, i.e. that this injury "fairly can be traced to the challenged action." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); *see also Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758. Evanston has never enforced this ordinance against any religious organization. There are over 70 churches currently holding services within the city limits. Love Church met at five locations within Evanston prior to this litigation without any objection from the city. One location, the Fleetwood–Jourdaine Community Center, was, in fact, a city-owned facility. Moreover, Love Church never even applied for a special use permit. Plaintiffs correctly assert that such application may not be necessary to establish standing. *Entertainment Con-*

*cepts, Inc., III v. Maciejewski*, 631 F.2d 497 (7th Cir.1980). In *Maciejewski*, however, we held that a party must "reasonably assert that it fears enforcement" in order to establish constitutional standing. *Id.* at 500. Here, given Evanston's historic policy of non-enforcement and Love Church's repeated violation of the Ordinance without any municipal retaliation, plaintiffs cannot reasonably assert that they fear enforcement.

Finally, Love Church has failed to demonstrate that the alleged injury "is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. at 38, 96 S.Ct. at 1924. The possibility that Love Church would be better able to locate rental property absent the special use requirements of the Ordinance is wholly conjectural. Pastor Gill, by his own admission, spent over 14 months trying to rent property. Despite repeated attempts, he was unable to obtain a lease. According to his affidavit, on four occasions an "affordable" lease was available but for the provisions of the Ordinance. At other times, Gill complained that potential landlords would not include a contingency clause providing for the termination of the lease if a special use permit was not issued by the city. Significantly, Gill does not contend that no contingency clause was available, but merely that the requirement of one increased the price of a lease. Presumably, Gill could have obtained such a clause if he was willing to pay the cost of one.

Yet whatever specific difficulties Gill claims to have encountered, they are the same ones that face all rentors, not merely churches. The harsh reality of the marketplace sometimes dictates that certain facilities are not available to those who desire them. Evanston's special permit requirements apply not only to religious facilities but to art galleries, libraries, and museums as well. If Evanston were enjoined from enforcing its Ordinance, an Ordinance they have never enforced to begin with, there is simply no indication that Love Church could have obtained rental property more easily. Indeed, when Pastor Gill finally

secured a location for Love Church at 823 Davis, the injunction had not taken effect. Beyond this, services were held at five locations in Evanston without any compliance with the Ordinance. When Love Church vacated these sites it was for reasons unrelated to the Ordinance. Clearly, Gill was able to locate property for his ministry in the face of this Ordinance, and any attendant difficulties were those suffered by any under-financed rentor.

As Love Church states quite eloquently in its brief:

New churches do not spring "full blown" into existence as enormous congregations with huge choirs and imposing tabernacles. Many churches start as groups meeting in homes or local schools. Then they become large or stable enough to lease or purchase a small permanent facility. In time the congregation may establish a building fund to erect a facility. Some congregations never progress beyond certain levels while others shrink and consolidate.

Love Church, unfortunately, stumbled on the path to an "enormous congregation." With over 70 churches, Evanston is a difficult religious market in which to negotiate such a path. But any allegation that Love Church foundered due to the long shadow of a dormant Evanston Zoning Ordinance is far too speculative to find a hearing in the federal courts. As the Supreme Court stated in *Warth*:

(P)etitioners' descriptions of their individual financial situations and housing needs suggest ... that their inability to reside in Penfield is the consequence of the economics of the area housing market, rather than of respondents' assertedly illegal acts.

422 U.S. at 506, 95 S.Ct. at 2209. Similarly, Love Church suffered an alleged crisis within its congregation, not because of Evanston's purportedly harsh requirements for religious institutions, but rather because they lacked the wherewithal to locate rental property. No injunction could undo this hardship. No federal court can address this situation.[4]

### III.

Love Church has failed to allege a "distinct and palpable" injury fairly traceable to Evanston's actions or properly redressable by a favorable ruling. We, therefore, hold that it lacks constitutional standing to sue. As there is no "case" or "controversy" at issue for resolution by the federal courts, the district court had no jurisdiction to hear this complaint. The judgment below is VACATED, and we now REMAND with directions to DISMISS the claim.

---

**4.** Because we hold that Love Church has not presented a "case" or "controversy" sufficient to establish constitutional standing under Article III, we do not reach the prudential limitations on standing recognized by the Supreme Court.

*See Freedom from Religion Foundation, Inc. v. Zielke*, 845 F.2d 1463 (7th Cir.1988) (where constitutional standing is not established prudential limitations need not be explored).