(No. 46780 )

GEORGE V. SCHUMANN, Appellee, v. THE INDUS-
TRIAL COMMISSION *et al.*—(John M. Coan, Inc.,
Appellant.)

*Opinion filed September 26, 1975.*

Kane, Doy & Harrington, of Chicago (Steven H.
Shanok, of counsel), for appellant.

Melvin Gaines, of Chicago, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion
of the court:

This is an appeal from the circuit court of Cook
County in proceedings to review orders of the Industrial
Commission. (50 Ill.2d R. 302(a).) The facts pertinent to
the issues on appeal are undisputed. At a hearing before
the arbitrator, claimant, George V. Schumann, testified
that on February 6, 1968, he worked as a truck mechanic
for John M. Coan, Inc. (hereinafter the employer). While
moving a 600-pound sandblasting machine, he slipped on
sand and the machine fell directly on top of him, between
his legs and the soft part of the stomach and on his right
hand. The employer's manager-supervisor and two employ-
ees lifted the machine so claimant could crawl from under
it. Although the manager insisted he be taken by ambu-

lance, claimant took a taxicab to the hospital.

At the hospital, X rays were taken of claimant's right hand and he was given a general examination. He was then discharged without treatment. The following day he visited Dr. Michaels, his family doctor, who examined him and prescribed medication for pain. Claimant stated that he saw two other doctors following his initial visit to Dr. Michaels, but that no treatment was given by either of the two doctors other than one session of physical therapy for his right hand. He further stated that he continued to see Dr. Michaels until October, 1970. The treatment he received consisted of "shots" in both arms and prescriptions for drugs to relieve pain.

Claimant testified that the medical bills he received were given to the manager-supervisor, who forwarded them to the insurance company. About 6 months after the accident, claimant spoke to Mr. Hoya, the insurance broker for his employer. He informed Hoya that he was dissatisfied with his doctor, since his condition did not appear to be improving, and he considered going to the Mayo Clinic. Claimant wanted to know if the insurance company would pay the bills. Hoya responded that he should not worry because the employer had insurance which would pay the medical bills. Claimant later decided, however, not to go to the Mayo Clinic. In August, 1968, he spoke with Hoya concerning a hospital bill which had not been paid. Hoya told him that he had the bill and it would be paid. Claimant again spoke with Hoya in December, 1968, and again wanted to know if the medical bills would be paid by the insurance company. Hoya reassured him that the bills would be paid.

Claimant asserted that some time in early 1969 he received a telephone call from Hoya telling him that the people at the insurance company wanted to meet him. As a result of this call, he went to the offices of the insurance company in late February or early March, 1969. He spoke with Mr. Nolan, a representative of the company, who

stated that he had no knowledge of a request that claimant visit the insurance company. Claimant then asked Nolan to telephone Hoya to clarify the matter, but Hoya denied that he knew him. Claimant then called Robert Coan, the secretary-treasurer of the employer, who, in turn, spoke to Hoya. Thereafter Hoya called Nolan to acknowledge that he did remember claimant. While at the insurance company, claimant was informed that the company would no longer pay any medical bills, since one year had passed from the date of the accident and he had not filed for an adjustment of his claim. All of the medical and prescription bills submitted to the insurance company within one year of the accident were paid. On August 22, 1969, 5½ months after the visit to the insurance company, claimant filed an application for adjustment of claim.

Claimant further testified that at the time of the hearing he was still working as a mechanic for the employer. Since the accident, however, he could not torque the diesel engines which require 450 to 500 pounds of pressure. He additionally stated that when he works underneath a truck on a dolly, he experiences a "terrific headache" and his neck would be sore. At night when he would go to sleep, he would lie in bed for an hour or two and then would have to sit in a chair to get the "kink" out of his neck before he could go to sleep.

Robert Coan testified and substantially supported claimant's version regarding conversations with Hoya at which Coan was present. A medical report from Dr. Michaels was the sole medical evidence offered. The report disclosed, basically, that X rays taken of claimant's right wrist showed the bony structures to be intact with no findings of dislocation or fracture. The wrist, however, remained swollen and weak one month after the accident. The report further revealed that cervical X rays showed a degenerative disease throughout the spine, and that by June 30, 1969, claimant had received 9 weeks of "physical therapy—cervical traction."

At the outset of the hearing before the arbitrator, counsel for the employer did not raise the question of notice, but raised the defense of the statute of limitations and moved that the application for adjustment of claim be dismissed, because it had been filed more than one year from the date of the accident. This motion was renewed at the close of proofs, but it was denied by the arbitrator. The arbitrator ruled that the statute of limitations did not apply because fraud and undue pressure had been used to deprive claimant of his legal remedies. The arbitrator found that no temporary disability had been claimed or compensation paid as a result of the accident, but that claimant had sustained accidental injuries causing the permanent and complete loss of use of the right hand to the extent of 20% and of the right leg to the extent of 15%.

Following oral argument, the Industrial Commission issued its decision on August 6, 1973, finding that notice of the accident was not given within the time required by law, and, accordingly, reversed the arbitrator's award. The employer then filed a motion to recall the decision for clerical error, and 15 days after the decision was received by the parties, a hearing was held on the motion. At the time of this hearing, claimant had already filed his *praecipe* for writ of *certiorari* with the clerk of the circuit court of Cook County and a writ of *certiorari* had been filed with the Industrial Commission. The employer called the Industrial Commission's attention to a written notice posted after the case was argued which indicated that the case had been reversed pursuant to statute. The employer maintained that this reference to statute meant the statute of limitations. Moreover, a written notation on the file jacket read "Reversed-Statute of Limitations." It was asserted that this notation clearly showed that the basis for reversal of the arbitrator's award was not correctly reported in the decision. The employer contended that this inaccuracy was the result of a clerical error. The day

following this hearing, the Industrial Commission informed each side by letter that a clerical error had been made and that the parties should return their copies of the decision. The Industrial Commission then issued a corrected decision 19 days later which reversed the arbitrator's award because the claim was barred by the statute of limitations.

On *certiorari* to the circuit court of Cook County, both decisions of the Industrial Commission were reversed and the decision of the arbitrator was reinstated. The employer appeals, contending that the Industrial Commission's determinations were not against the manifest weight of the evidence, and, in the alternative, if the claim is not barred by the statute of limitations, then the claimant has failed to prove he sustained any permanent disability.

Section 19(f) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.19(f)), as pertinent to this appeal, provided that the Industrial Commission may, on the motion of either party, correct any clerical error within 15 days after the date of receipt of any decision on review, and shall have the power to recall the decision on review and issue in lieu thereof a corrected decision. In *Zbilski v. Industrial Com.,* 48 Ill.2d 131, the Commission informed the opposing parties by letter within the 15-day time limit that an error had been made in its decision on review. All parties were instructed to return their copies of the decision and a corrected decision would be issued. The claimant in that case, however, did not return his copy and the Industrial Commission never issued a corrected decision. Following reversal of the Commission's decision by the circuit court, an appeal was taken to this court. We held that since the Industrial Commission had acknowledged an error in its decision on review and had recalled it, we were not in a position to review the decision of the Commission until a corrected decision had been made. The case was remanded to the Industrial Commission for further proceedings. We additionally held that the fact a *praecipe* for writ of *certiorari* and the writ

had been filed prior to the date the Industrial Commission informed the parties of an error did not divest the Commission of its power to correct an error under the provisions of section 19(f).

In the present case the facts disclose that a hearing was held within the time limit on the issue of whether a clerical error had been made in the Industrial Commission's decision. Although the parties were not notified by letter that the decision was recalled until the 16th day, this was only a mere formality. Neither party may claim any prejudice by this action, since both were aware within the time limit of the possibility of a clerical error and the possibility of the Industrial Commission issuing a corrected decision. Here, as in *Zbilski,* the fact that claimant filed a *praecipe* for writ of *certiorari* and the writ had been filed prior to the date the Industrial Commission held the hearing on the motion to recall did not divest the Commission of authority granted to correct clerical errors under section 19(f).

The only issue before this court, therefore, is whether the Industrial Commission's determination that the claim for compensation was barred by the statute of limitations is against the manifest weight of the evidence. (*City of Chicago v. Industrial Com.,* 60 Ill.2d 283, 286; *Pontiac Chair Co. v. Industrial Com.,* 59 Ill.2d 261, 266.) Section 6(c) of the Workmen's Compensation Act provides:

> "In any case *** unless the application for compensation is filed with the Commission within one year after the date of the accident, where no compensation has been paid, or within one year after the date of the last payment of compensation, where any has been paid, the right to file such application shall be barred." Ill. Rev. Stat. 1969, ch. 48, par. 138.6(c).

Section 8(a) of the Act provides:

> "The employer shall provide the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services ***.
>
> * * *

The furnishing of any such [medical] services or appliances by the employer is not the payment of compensation." Ill. Rev. Stat. 1969, ch. 48, par. 138.8(a).

It is undisputed that claimant did not file an application for compensation until 18 months after the date of his accident. Nevertheless, he maintains, as the arbitrator found, that the employer is estopped from asserting the bar of the statute, because misleading representations were made by its agents. A review of the record, however, reveals a complete absence of any showing of fraud or undue pressure to deprive claimant of compensation. His own testimony discloses that all conversations with Hoya, the insurance broker for the employer, related solely to questions regarding the payment of medical bills and contained no references to compensation. There is no testimony pertaining to any statement or representation by Hoya attempting to mislead claimant concerning the distinction between the payment of medical bills and the payment of compensation upon which the statute of limitations is based. Claimant's only contact with the insurance company occurred over one year after the date of the accident. Moreover, when he was informed that the insurance company would no longer pay his medical expenses because he had not filed an application for adjustment of claim, he delayed for almost 6 months before he filed the application. Claimant has failed to establish any misrepresentation or statement by Hoya, or a representative of the insurance company, upon which he relied to his detriment. After a consideration of the record, we cannot say that the decision of the Industrial Commission was contrary to the manifest weight of the evidence. We also find from a review of the record, although it is unnecessary for a resolution of this case, that claimant has failed to prove by competent evidence that he sustained any permanent disability as a result of the accident.

Accordingly, the judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*