HERLIHY MID-CONTINENT COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (David Kutina, Appellee).

First District (Industrial Commission Division)   No. 1—92—1437WC

Opinion filed August 13, 1993.

Garofalo, Hanson, Schreiber & Vandlik, Chartered, of Chicago, for appellant.

Frederick S. Grahn, of Grahn & Grahn, Ltd., of Chicago, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

On October 8, 1986, claimant, David Kutina, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, 138.1 *et seq.*). Therein he alleged injuries to his back and legs arising out of and in the course of his employment with the employer, Herlihy Mid-Continent Company. After a hearing held on February 25, 1989, the arbitrator issued a "Memorandum of Decision," wherein he found the statute of limitations did not bar the claim and that claimant was entitled to 75 weeks of temporary total disability (TTD). On review the Industrial Commission (Commission) affirmed and adopted the arbitrator's decision. The circuit court confirmed the Commission's decision, and this timely appeal followed.

The employer argues on appeal that the Commission erred in finding that it was estopped to assert a statute of limitations defense.

On November 23, 1982, claimant, a carpenter, was working for the employer. While walking backwards and unraveling a coil of wire, claimant lost his footing and fell down. Claimant immediately felt pain in his right lower back and was unable to stand up for 15 minutes. A co-worker drove him to the construction office, where he stayed until the end of the work day. Claimant went to see Dr. D.L. Doorinkaat, a chiropractor who had previously treated him for a neck condition. Claimant was off work for a week following the accident. He continued to receive treatment from Dr. Doorinkaat on a regular basis into January 1983, at which time claimant felt sufficiently improved to discontinue treatments. The employer's insurance carrier paid Dr. Doorinkaat's bills.

Due to a recurrence of his back pain, claimant began seeing another chiropractor, Dr. Scott Kozek, on March 19, 1984. Subsequently, an insurance investigator from Argonaut Insurance met with claim-

ant. The investigator asked claimant "if [he] was working and how [he] was doing." Claimant described his back problems. The investigator said nothing to claimant about the relevant statute of limitations period. Claimant continued to receive treatments from Dr. Kozek throughout 1984 and 1985. The insurer paid Dr. Kozek's bills and, at no time prior to the end of the statute of limitations period, did it inform claimant of the need to file a claim within said period.

In a letter dated November 9, 1984, the insurance investigator asked Dr. Kozek to complete a standard report form concerning claimant's condition. In the completed form dated November 16, 1984, Dr. Kozek wrote that X rays taken on March 29, 1984, indicated subluxations of the L4 vertebra and both iliac joints. At that time, Dr. Kozek stated that he was unable to determine whether the injury was permanent. On March 18, 1985, Dr. Kozek completed the same form submitted by the insurer and again stated that claimant's condition was due to subluxations of the L4 vertebra and both iliac joints and that it was uncertain whether the injury was permanent in nature.

In March 1985, claimant was examined by Dr. John Dwyer at the insurer's request. Claimant was not informed by Dr. Dwyer about the statute of limitations, nor was he ever shown a copy of Dr. Dwyer's report, which stated that there were no objective indications of disability in claimant's lower back and that he could work normally with no restrictions.

In a July 29, 1985, letter to the insurer, Dr. Kozek stated that he was not certain when his treatment of claimant would conclude. He further stated that he expected to treat claimant every three or four weeks for the next 12 to 18 months. Dr. Kozek concluded the letter by inviting the insurer to discuss claimant's condition further. On November 2, 1985, Dr. Kozek again wrote the insurer, informing it that claimant's treatment would continue at three- to four-week intervals over the next 12 to 14 months. Dr. Kozak was unable at that time to determine a final date of treatment or whether claimant's condition was permanent. Also, he once more invited the insurer to discuss this matter further. Dr. Kozek's notes indicate that on February 21, 1986, he talked with Brenda Moore of the insurance company regarding claimant's physical status.

Claimant continued receiving treatments from Dr. Kozek in 1986. On March 11, 1986, claimant was examined by Dr. Anthony Brown at the insurer's direction. Dr. Brown concluded that claimant was not impaired, and, therefore, no treatment of his back was required. In a letter dated April 9, 1986, the insurer notified claimant that it would pay no additional medical expenses. Claimant continued treatment

with Dr. Kozek and paid his own medical expenses. It should be noted that throughout the period following his accident, claimant worked continuously for the employer.

On May 5, 1986, Dr. Kozek referred claimant to Dr. Gleason, an orthopedic surgeon, for an independent evaluation of claimant. Dr. Gleason determined that claimant was experiencing sciatic neuritis coming from the lumbar spine. On October 8, 1986, claimant filed an application for adjustment of claim.

There is no question there was an accident, and the employer is responsible for the medical expenses within the limitations period. Section 8(a) requires the employer pay the medical expenses. Section 8(a) (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(a)) specifically provides:

> "The furnishing by the employer of any such services or appliances is not an admission of liability on the part of the employer to pay compensation.
>
> The furnishing of any such services or appliances or the servicing thereof by the employer is not the payment of compensation."

An apparent reason for not calling medical payments compensation is to encourage employers to keep abreast of their employees' medical conditions with respect to injuries. The employer is also responsible for penalties for failure to pay medical expenses.

As stated above, the issue before this court is whether the Commission's decision that the employer was estopped to assert a statute of limitations defense is against the manifest weight of the evidence.

The statute reads in relevant part:

> "[I]n any case, other than one where the injury was caused by exposure to radiological materials or equipment or asbestos unless the application for compensation is filed with the Commission within three years after the date of the accident, where no compensation has been paid, or within 2 years after the date of the last payment of compensation, where any has been paid, whichever shall be later, the right to file such application shall be barred." Ill. Rev. Stat. 1985, ch. 48, par. 138.6(d).

The employer argues the following. Because the evidence is undisputed, the question before us is a matter of law rather than factual interpretation, and, therefore, the Commission's decision is not binding upon us. Further, the record shows that any contacts between claimant and the insurance company did not deal with the payment of compensation. Nor did these contacts involve any misrepresentations, fraud, or undue pressure to deprive claimant of compensation. Moreover, the employer maintains that *Schumann v. Industrial Comm'n*

(1975), 61 Ill. 2d 241, is controlling, rather than *Kaskaskia Constructors v. Industrial Comm'n* (1975), 61 Ill. 2d 532, upon which the Commission relied.

In response, claimant contends that the evidence demonstrates a course of conduct on the part of the employer's insurance company that caused claimant's detrimental reliance thereon. Additionally, claimant argues that *Kaskaskia Constructors v. Industrial Comm'n* (1975), 61 Ill. 2d 532, should control this appeal.

Initially, we note that the employer incorrectly asserts that this issue is a matter of law rather than of factual interpretation. While the facts are not in dispute, there is clearly more than one conclusion that could be drawn from them. Only when undisputed facts are susceptible of only a single inference does the issue become one of law. (*Fischer v. Industrial Comm'n* (1986), 142 Ill. App. 3d 298.) The Commission's decision on a question of fact will not be disturbed unless it is against the manifest weight of the evidence. *Williams v. Industrial Comm'n* (1991), 216 Ill. App. 3d 536.

The history and chronology of claimant's injury and treatment follow:

| Date: | Action: |
|---|---|
| November 23, 1982 | Claimant's injury. |
| November 1982 through January 1983 | Claimant was treated by Dr. Doorinkaat. |
| March 19, 1984 | Claimant is first treated by Dr. Kozek. |
| *April 1984 | Insurance investigator met personally with claimant. |
| *November 9, 1984 | Insurance company representative sent Dr. Kozek a standard insurance report. Dr. Kozek advised the insurance company regarding claimant's X rays. |
| *March 18, 1985 | Insurance company investigator sent Dr. Kozek a standard report form and requested him to complete same. He returned it and stated that it was uncertain as to whether claimant's injury was permanent. |

| | |
|---|---|
| *March 1985 | Insurance company contacted claimant and arranged to have claimant examined by Dr. Dwyer, who found that claimant had no disability. |
| July 29, 1985 | Dr. Kozek advised insurance company that claimant would require treatment for 12 to 18 months longer and invited an insurance company representative to discuss the permanency of claimant's injury. |
| November 23, 1985 | Statute of limitations ran. |
| February 21, 1986 | Telephone call by Dr. Kozek to Brenda Moore, insurance company representative, regarding claimant's condition. |
| *March 11, 1986 | Insurance company arranged for examination of claimant by Dr. Brown, who determined that claimant had no disability. |
| *April 9, 1986 | Insurance company advised claimant it would not pay additional medical bills. |
| May 5, 1986 | Dr. Kozek referred claimant to Dr. Gleason, who diagnosed claimant as having sciatic neuritis. |
| October 8, 1986 | Claimant filed an application for workman's compensation. |

Each of the above items designated by an asterisk shows affirmative action taken by the insurance company with claimant or Dr. Kozek.

Throughout the relevant period, claimant and his doctor had maintained a working relationship with the employer's insurance company as indicated above. As the employer admits, at no time during the statutory period did it or its insurance company ever tell claimant about the three-year statute of limitations. As noted by the asterisks

above, claimant or his doctor was contacted by representatives of the employer's insurance company. Claimant was examined twice by a different insurance company's doctor, the first of which occurred before the statute of limitations had run and the second after the statute of limitations had run. The insurance company sent claimant to be examined by Dr. Anthony Brown in March 1986. In April 1986, claimant was advised by the insurance company that it would no longer pay any of the medical bills and, further, that claimant did not have a compensable condition. It should be noted that all of claimant's medical bills were paid from November 1982 through April 9, 1986, and that Dr. Brown's examination at the insurance company's request was performed after the statute of limitations ran and prior to the time claimant was advised that the insurance company would not pay additional medical bills.

*Kaskaskia*'s facts, set forth below, are far more similar to those of the appeal at bar than *Schumann*'s. In *Kaskaskia*, claimant was injured on June 18, 1971. On March 30, 1972, he received a TTD payment for the period of July 9, 1971, to August 27, 1971. On August 30, 1972, the insurance carrier paid a physician for treatment given claimant on May 17, 1972, and June 23, 1972. In February 1973, claimant was told that only surgery could correct his condition. Claimant advised the insurer that he was scheduled for surgery on April 10, 1973. In March 1973, two representatives of the insurer came to claimant's home and discussed the matter with him. On April 2, 1973, claimant received a letter from the insurance carrier that it had concluded his present complaints were not related to the June 1971 accident and, accordingly, it would not pay for any additional treatment. The *Kaskaskia* claimant filed his application for adjustment of claim on April 3, 1973. On April 5, 1973, the insurer paid for physician's services rendered to claimant on October 11 and December 27, 1972.

In *Kaskaskia*, the Commission found that the disabling condition resulting from the accident was temporary and had not reached a state of permanency and entered an award pursuant to section 19(b) of the Act. However, it should be noted that in that case the claimant received TTD payments for a period of approximately seven weeks. The circuit court confirmed the Commission's decision and held as follows:

> "Petitioner's uncontroverted testimony shows that the representatives of respondent's insurance carrier discussed his claim with him and did not advise him that the limitations period was about to run. The fact that petitioner withheld filing an application for adjustment of claim until receipt of the letter denying liability would support a finding that petitioner relied upon the

conduct of the insurance carrier's representatives. *Implicit in the decision of the Industrial Commission is the finding that by this conduct respondent was estopped to assert the defense of limitations and we cannot say that the finding is against the manifest weight of the evidence.*" (Emphasis added.) (*Kaskaskia*, 61 Ill. 2d at 535.)

In the case under consideration , the facts support the Commission's conclusion that claimant relied to his detriment on the insurer's conduct, and, as a result, the employer is estopped to assert a statute of limitations defense.

In *Schumann*, the Commission found that the subject claim was barred by the statute of limitations and the circuit court confirmed the Commission's decision, and the supreme court affirmed the circuit court's judgment.

Also, in *Schumann*, the insurer paid claimant's medical bills for only one year and did not pay any medical bills after the statute of limitations had run. Moreover, the employer's insurance company informed claimant that it would not pay his medical bills because he had not filed an application for adjustment of claim. Despite this, claimant did not file a claim with the Commission for six months. The *Schumann* court found that claimant did not detrimentally rely upon any statement by the insurance carrier; therefore, it held that employer was not estopped to raise the statute of limitations defense.

The case before us represents an entirely different relationship between claimant and insurer than that found in *Schumann*. Here, claimant had an established working relationship with the insurer that monitored his medical treatment. Within the statutory period, the insurer had an investigator meet with claimant and later had claimant examined by a physician who determined that claimant did have a compensable condition. Nevertheless, this insurer continued to pay for medical expense after the statute of limitations period had run. When the insurer notified the claimant that it would not pay for any additional medical bills, it was basing its decision on the belief that treatment was no longer necessary, not because he had not filed a timely claim.

Moreover, unlike the *Schumann* claimant, who had no compelling explanation for his delay of six months in filing his application for adjustment of claim, this claimant sought and received independent verification of his need for continuing medical treatment. He then filed his application for adjustment of claim.

Further, as the circuit court in this cause aptly pointed out in its decision and judgment order:

"Importantly, since the [claimant] did not receive temporary total disability payments and he continued working while receiving medical treatments, the employer was not required to report the injury under Section 6(b) of the Act. As a result the Commission did not forward to [claimant] a copy of the handbook which is mailed to all injured employees and informs those employees of their rights and obligations under the Act. The handbook specifically notifies and informs the employee of the statute of limitations. Again, because the [claimant] was not a [malingerer] and did not take time away from work, he was deprived of information necessary to help him file a timely Application for Adjustment of Claim."

Based upon *Kaskaskia* and the record before us, we find that claimant relied to his detriment upon the insurer's conduct and silence regarding the statute of limitations period. Accordingly, we hold that the Commission correctly decided that the employer was estopped to assert the statute of limitations defense.

The judgment of the circuit court is affirmed.

Affirmed.

SLATER and RARICK, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, dissenting:

I do not agree that the instant case is similar to the facts in *Kaskaskia*. The facts in this case are similar to those in *Schumann*.

As the majority states, there was an accident and the employer is responsible for the medical expenses within the limitations period. Also, as pointed out, section 8(a) of the Act requires the employer pay the medical expenses. Section 8(a) specifically provides:

"The furnishing by the employer of any such services or appliances is not an admission of liability on the part of the employer to pay compensation.

The furnishing of any such services or appliances or the servicing thereof by the employer is not the payment of compensation." Ill. Rev. Stat. 1985, ch. 48, par. 138.8(a).

An apparent reason for not calling medical payments compensation is to encourage employers to keep abreast of its employees' medical conditions with respect to injuries. The employer is also responsible for penalties for failure to pay medical expenses.

The supreme court on the same day filed *Schumann* and *Kaskaskia*. Neither Justice Kluczynski in *Schumann* nor Justice

Goldenhersh in *Kaskaskia* referred to the other case. The only reference to the two cases is in the dissent of Justice Ryan in *Kaskaskia*. A quote from *Schumann* applies to this case. In *Schumann*, the supreme court stated:

> "A review of the record, however, reveals a complete absence of any showing of fraud or undue pressure to deprive claimant of compensation. His own testimony discloses that all conversations with Hoya, the insurance broker for the employer, related solely to questions regarding the payment of medical bills and contained no references to compensation. There is no testimony pertaining to any statement or representation by Hoya attempting to mislead claimant concerning the distinction between the payment of medical bills and the payment of compensation upon which the statute of limitations is based. Claimant's only contact with the insurance company occurred over one year after the date of the accident. Moreover, when he was informed that the insurance company would no longer pay his medical expenses because he had not filed an application for adjustment of claim, he delayed for almost 6 months before he filed the application. Claimant has failed to establish any misrepresentation or statement by Hoya, or a representative of the insurance company, upon which he relied to his detriment."

(*Schumann*, 61 Ill. 2d at 247, 335 N.E.2d at 429.)

In *Kaskaskia*, there were conversations with the insurance carrier concerning the claim and the claimant received TTD. Claimant had been injured on June 18, 1971. In August 1972, the respondent paid the physician's treatment services which were rendered in May and June 1972. The TTD payment in *Kaskaskia* had been made on March 29, 1972. In March 1973, the insurance company representative came to talk to the claimant. The supreme court suggests that in the month that the statute of limitations would run, the insurance company representatives met with the claimant and did not mention the statute of limitations. On April 2, 1973, the respondent notified the claimant that it would deny liability and one day later, the claimant filed his application for adjustment of claim.

No TTD was ever paid by respondent. The majority gives importance to the respondent's contact with claimant or the doctors. They are six in number of which two were after the statute of limitations had expired and do not contribute to any estoppel.

During the three-year limitations period, the insurance carrier for the respondent had only two direct contacts with the claimant, the first being April 1984 when an investigator spoke with the claimant

and in March 1985 when the respondent insurance company notified the claimant to make an appointment for an independent medical exam. With respect to the April 1984 meeting, more than 1½ years before the statute of limitations date, between claimant and an insurance investigator, the record shows nothing in that conversation that would lull claimant or commit the respondent. The March 1985 contact was merely to determine the need for further medical treatment.

After the April 9, 1986, notification that the respondent would not pay any further medical bills, the claimant waited until October 9, 1986, some six months later, to file a claim.

The independent contacts by the respondent's insurance company with the medical providers is not evidence upon which the claimant can rely. The record is silent as to claimant's even being aware of these contacts. As the employer was responsible for the medical expenses, their contacts were legitimate as well as authorized by the Act. As to claimant's knowledge, a person who does not have knowledge of the acts done, and which are claimed to result in estoppel, cannot invoke the doctrine since there cannot be any reliance on the acts which were unknown.

JUSTICE RAKOWSKI joins in this dissent.