WELDON GALIHER, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Wayne-White Counties Electric Co-Op, Appellant).

Fifth District (Industrial Commission Division)    No. 5—93—0307WC

Opinion filed June 16, 1994.

RARICK, J., dissenting.

Thomas H. Kuergeleis, of Keefe & DePauli, P.C., of Fairview Heights, for appellant.

William L. Wimmer, of Wimmer, Stiehl & Montalvo, P.C., of Belleville, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The employee, Weldon Galiher (claimant), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) alleging that he sustained accidental injuries on February 10, 1983, arising out of and in the course of his employment with Wayne-White Counties Electric Co-Op (employer). The arbitrator denied compensation finding that claimant's application for adjustment of claim was barred by the statute of limitations. (Ill. Rev. Stat. 1985, ch. 48, par. 138.6(d).) The arbitrator's finding was affirmed by the Industrial Commission (Commission), and claimant appealed the decision of the Commission to the circuit court of Wayne County. The circuit court subsequently issued an order finding that the decision of the Commission was against the manifest weight of the evidence and that the employer was estopped from asserting the statute of limitations as a defense to claimant's application for adjustment of claim.

The issue on appeal is whether the circuit court erred in ruling that the employer was estopped from asserting the statute of limitations. We reverse.

The claimant worked for the employer as a lineman. On February 10, 1983, he injured his left arm, right shoulder, and hip while reaching to place wires on the top of a new pole. Following treatment of his injuries, claimant returned to work on July 11, 1983. During the time the claimant was off work and receiving treatment, the employer paid temporary total disability benefits and medical expenses. On September 6, 1984, the claimant met with a representative of

the employer's workers' compensation insurance carrier. At this first meeting they discussed the condition of the claimant's arm and his need to return to his doctor for further treatment or evaluation. No settlement offers were extended, and there was no discussion regarding the length of time the claim would remain viable. A second meeting took place in November 1984, but again no settlement offers were made.

In May 1985, there was a third meeting which was attended by the claimant, the employer's manager, Bill Endicott, and the insurance company's representative, Major Drake. At that time, the insurance company representative extended a settlement offer which was reduced to writing. The offer sheet indicated in two places that the offer would remain open until February 9, 1986. Major Drake also testified that the three-year statute of limitations was discussed with the claimant, as well as claimant's options. However, the claimant testified that there was no reference to the statute of limitations on the offer sheet nor was he verbally informed of the limitations period by Major Drake.

The claimant testified that it was agreed by the insurance company that claimant would see Dr. Weber, his treating physician, regarding the possibility of additional surgery before accepting the settlement offer. Claimant further stated that he was told by Major Drake that the settlement offer was "guaranteed" and that Major Drake would be back to see him in November or December to get the results of claimant's appointment with the doctor. However, claimant stated that Major Drake never contacted him. The claimant testified that he tried to make an appointment for January 3, 1986, but that the appointment had to be rescheduled due to the holidays and that he did not actually see Dr. Weber until February 24, 1986. However, according to Dr. Weber's records, the claimant had an appointment scheduled for January 3, 1986, but did not appear on that date. After claimant's appointment with Dr. Weber, the insurance company was contacted regarding the results. The insurance company sent back a correspondence stating that there could be no settlement because the statute of limitations had expired. Claimant subsequently filed an application for adjustment of claim with the Commission on September 19, 1986.

The employer contends that the circuit court erred in reversing the decision of the Commission and ruling that the employer was estopped from asserting the statute of limitations because the claimant was informed of the limitations period and was not otherwise misled by the insurance company.

We first note that, contrary to claimant's assertion, the issue in

this case is a fact question. Not only is there a factual dispute regarding the conversation between Major Drake and the claimant, but more than one conclusion could be drawn from the facts. An issue is one of law only when undisputed facts are susceptible to a single inference. (*Herlihy Mid-Continent Co. v. Industrial Comm'n* (1993), 252 Ill. App. 3d 211, 215, 625 N.E.2d 108; *Fischer v. Industrial Comm'n* (1986), 142 Ill. App. 3d 298, 303-04, 491 N.E.2d 1333.) Therefore, because the issue *sub judice* is a factual one, the decision of the Commission can only be reversed if it is against the manifest weight of the evidence.

In *Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 442-43, 559 N.E.2d 1034, 1037, the court stated:

> "It is the province of the Commission to weigh and resolve conflicts in testimony, including medical testimony, and to choose among conflicting inferences therefrom. [Citations.] It is only when the decision of the Commission is without substantial foundation in the evidence or its finding is manifestly against the weight of the evidence that the findings of the Commission should be set aside."

(See also *O'Dette v. Industrial Comm'n* (1980), 79 Ill. 2d 249, 253, 403 N.E.2d 221, 223-24.) "A reviewing court cannot reject or disregard permissible inferences drawn by the Commission because different or conflicting inferences may also be drawn from the same facts nor can it substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence." (*Martin v. Industrial Comm'n* (1992), 227 Ill. App. 3d 217, 219, 591 N.E.2d 108, 109.) It has been observed that " '[t]he manifest weight of the evidence is that which is "the clearly evident, plain and indisputable weight of the evidence." [Citations.] In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. [Citation.]' " (*Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 53, 426 N.E.2d 1276, 1281, quoting *In re Application of County Collector* (1978), 59 Ill. App. 3d 494, 499, 375 N.E.2d 553, 557.) Finally, " '[i]f the undisputed facts permit an inference either way *** then the Commission alone is empowered to draw the inference and its decision as to the weight of the evidence will not be disturbed on review.' " *Morgan Cab Co. v. Industrial Comm'n* (1975), 60 Ill. 2d 92, 97, 324 N.E.2d 425, 428, quoting *Greenberg v. Industrial Comm'n* (1961), 23 Ill. 2d 106, 108, 178 N.E.2d 646, 647.

The claimant's position is that the circuit court properly ruled that the employer is estopped from asserting the statute of limitations because the claimant relied on the acts and representations of

the insurance company to his detriment and had no way of knowing the true facts. (See *Pantle v. Industrial Comm'n* (1975), 61 Ill. 2d 365, 335 N.E.2d 491.) The acts and representations of the insurance company which the claimant argues that he was misled by were that the settlement offer was guaranteed, that the parties agreed to a final medical examination to determine if more surgery was needed, and that the offer would remain open until after the medical evaluation was completed. The claimant further states that he was never notified that settlement negotiations were terminated or that his claim would be barred after February 9, 1986. According to the claimant's testimony, he was never informed that the statute of limitations would expire on the date the offer terminated.

Although the claimant relies on *Molex, Inc. v. Industrial Comm'n* (1975), 62 Ill. 2d 46, 338 N.E.2d 390, and *Kaskaskia Constructors v. Industrial Comm'n* (1975), 61 Ill. 2d 532, 337 N.E.2d 713, in support of his argument, both cases are distinguishable. In *Molex*, the insurance carrier's agent (Ms. Ferrans) made an offer of settlement which was rejected by the claimant. Ms. Ferrans then suggested that claimant should come to the company's office and permit its doctor to examine him and possibly they could make a better offer. The claimant agreed, and Ms. Ferrans indicated that she would make an appointment and call claimant back. Despite several letters and telephone calls to Ms. Ferrans over the next two months, she never responded. When he was finally able to speak with someone else at the insurance office, claimant said he was still waiting for an appointment with the doctor. He was then told that the statute of limitations had run out. In *Kaskaskia Constructors*, the claimant was advised by his doctor that surgery was necessary. The claimant so advised the insurance carrier, and sometime in March 1973, two representatives of the carrier came to his home and discussed the matter with him. Nothing was said about any kind of time limitation. On March 29, 1973 (the day that the statute of limitation expired), the carrier sent claimant a denial letter. In affirming the Commission's finding of estoppel, the supreme court stated:

> "The resolution of disputed questions of fact is primarily the function of the Industrial Commission. [Citation]. Petitioner's uncontroverted testimony shows that the representatives of respondent's insurance carrier discussed his claim with him and did not advise him that the limitations period was about to run. The fact that petitioner withheld filing an application for adjustment of claim until receipt of the letter denying liability would support a finding that petitioner relied upon the conduct of the insurance carrier's representatives. *** [W]e cannot say that

the finding is against the manifest weight of the evidence." (*Kaskaskia Constructors*, 61 Ill. 2d at 535, 337 N.E.2d 714-15.) It should also be noted that in both *Molex* and *Kaskaskia*, the supreme court affirmed the Commission's factual findings of estoppel, whereas in the instant case, the claimant seeks to reverse the Commission's factual finding.

Unlike *Molex* and *Kaskaskia*, the claimant here was given a written settlement offer with the date the offer would close nine months before the expiration of the limitations period. In addition, the insurance company representative testified that he informed the claimant of the date when the statute of limitations would expire and that his claim would be barred. Major Drake testified:

"And I explained to him if he accepted, that was going to be the final amount he was going to get because these things didn't stay open forever and we had to close our file at sometime. \*\*\*

I told him about the three year statute in Illinois on Workmen's Comp[.], that he had three years from the date of the injury to do something about it and that I wrote on there what that three year period or date would be, the latest time he had to do something about it."

Contrary to claimant's contention, we judge that there is ample evidence to support a finding that the employer should not be estopped from asserting the statute of limitations as a defense.

Accordingly, the order of the circuit court is reversed, and the decision of the Industrial Commission dated November 17, 1988, is reinstated.

Reversed; Industrial Commission decision reinstated.

McCULLOUGH, P.J., and WOODWARD and SLATER, JJ., concur.

JUSTICE RARICK, dissenting:

I respectfully dissent.

While I agree with the majority that, contrary to the claimant's assertion, the issue of whether an estoppel arose is a question of fact, I believe that the Commission's decision was contrary to the manifest weight of the evidence, and that the circuit court's finding that respondent was estopped from asserting the statute of limitations should be affirmed.

Clearly, there is a factual dispute with respect to whether there was any discussion at the May 1985 meeting regarding the statute of limitations. Drake testified that he told claimant that he had three

years from the date of the injury "to do something about it" and when that period would expire in this case. Claimant testified that no reference was made to the statute of limitations either by Drake or in the written offer.

Bill Endicott, the employer's general manager, testified that based upon the conversation between himself, claimant, and Drake, it was his understanding that the time in which claimant had to accept the offer would be extended until claimant had the opportunity to see Dr. Weber again. Introduced into evidence was a March 20, 1986, letter from Endicott to Drake stating, "We were unaware that the statute of limitations was about to be applied to this case[ ]" and "Due to misunderstanding and not being aware that this claim was about to be terminated because of the statute of limitations, possibly this claim should remain open and negotiation of a settlement be made." This letter supports Endicott's testimony with respect to his understanding of what was agreed to at the May 1985 meeting, and both corroborate claimant's testimony that the parties agreed that claimant would see Dr. Weber again regarding the possibility of additional surgery before accepting the settlement offer.

The defense of estoppel generally requires proof that claimant relied upon some acts or representations of the employer and had no knowledge or convenient means of knowing the true facts. (*Pantle v. Industrial Comm'n* (1975), 61 Ill. 2d 365, 371, 335 N.E.2d 491, 495.) There are, however, circumstances out of which an estoppel will arise even in the absence of outright misrepresentation. See *City of Chicago v. Industrial Comm'n* (1979), 75 Ill. 2d 270, 280, 388 N.E.2d 406, 411.

The majority attempts to distinguish *Molex* and *Kaskaskia* on the basis that in the present case claimant was given a written settlement offer indicating when the offer would close nine months before the expiration of the limitations period. While it is true that the written offer given to claimant at the May 1985 meeting indicated that it would expire on February 9, 1986, it is also clear from claimant's testimony and that of Bill Endicott that the nature of the discussion at this meeting was such that both were under the impression that despite the expiration date contained in the written offer, the insurer would extend the period of time claimant had to accept the offer until he had the opportunity to see Dr. Weber again. Claimant relied to his detriment on such representation. That Drake's statements at the May 1985 meeting were such that they could reasonably give rise to such interpretation is supported by the testimony of respondent's own manager, Endicott, who interpreted Drake's statements the same way claimant did. Under such circum-

stances, I believe that claimant clearly established the defense of estoppel, and the circuit court was correct in reversing the decision of the Commission.